956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Todd MOORE, Defendant-Appellant.
 No. 91-5720.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1992.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Steven Todd Moore appeals his conviction, following a jury trial, of possession of cocaine with intent to distribute and use of a firearm during a drug trafficking offense. For the reasons that follow, we affirm.
 
 
 2
 * On November 16, 1990, officers of the Chattanooga Police Department Narcotics Division and Special Police Operations Team executed a padlock order on a suspected crack house located at 2421 Vine Street in Chattanooga, Tennessee. Because police executing previous search warrants at the residence had discovered that the front of the residence was fortified with steel security doors, the officers decided to surround the residence and enter through the rear door. As the police surrounded and entered the residence, Moore and two other individuals, who were on the front porch, hurdled a bannister on the side of the porch and jumped to the ground.
 
 
 3
 Moore ran toward the street along the side of the house. Several officers pursued him. In the confusion, Moore ran into a parked vehicle. As he hit the car, a .25 caliber semiautomatic pistol was dislodged from his pocket or waistband and fell to the ground. Moore then turned and continued to run, this time toward the rear of the house. After successfully avoiding Officer Corless Cooper, who was near one of the rear corners of the house, Moore failed to negotiate an old fence at the edge of the property. He fell face down, allowing Cooper to catch him. In this position, she handcuffed him. When Cooper rolled Moore over, she discovered on the ground a pill bottle containing forty-seven cocaine base "rocks," which weighed 5.6 grams. The arresting officers later discovered $580 in Moore's pocket.
 
 
 4
 The pistol was later found to be unloaded. Additionally, Cooper admits that she never saw Moore holding the pill bottle. She admits also that there were cars parked near where the suspect was arrested and that she did not search those vehicles to determine if there were any additional drugs located there. Furthermore, the search of the house did not reveal any drugs.
 
 
 5
 On December 11, 1990, Moore was indicted by the federal grand jury in Chattanooga, Tennessee on charges of unlawful distribution of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (1988), as well as carrying a firearm in relation to the drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988). He was tried by jury on February 27 and 28, 1991 and was convicted of both counts of the indictment.
 
 
 6
 On March 5, 1991, Moore filed a motion for judgment of acquittal, which the district court denied on April 5, 1991. On April 22, 1991, he was sentenced to serve a term of imprisonment of 128 months. Moore now brings this appeal.
 
 II
 
 7
 Moore contends that the district court erred in admitting evidence as to drug dealers' modus operandi and use of firearms. "Admission of expert testimony is a matter within the broad discretion of the court, and a decision to admit such testimony is to be sustained unless manifestly erroneous." United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991).
 
 
 8
 During the trial, Investigator Randy Dunn of the Chattanooga Police Department Narcotics Division testified as to the modus operandi of crack dealers. Specifically, Dunn explained how crack is manufactured from cocaine powder and then packaged for sale in rock form on the street. Dunn explained also that individuals operating crack houses are frequently assigned different responsibilities; for example, one person is commonly assigned the responsibility of holding the drugs and money. This person remains in the background while "runners," who have only two or three rocks, handle the actual transactions. Through this method of segregating responsibility, drug dealers are able to reduce their exposure to robbery and arrest. Dunn explained further that the individual assigned the responsibility of maintaining the bulk of the drugs and cash is generally armed with a firearm, which is used to protect the money and crack on hand.
 
 
 9
 Federal Rule of Evidence 702 allows the admission of opinion testimony by an expert if the testimony will assist the trier of fact to understand the evidence or determine a fact in issue. Specifically, police officers may testify as to the methods and techniques employed in particular crimes. Id. This modus-operandi evidence is relevant to establishing the connection between the gun and the drug offense. See id. Accordingly, Moore's objection based on relevance is without merit, and the district court did not err in admitting the investigator's testimony.
 
 III
 
 10
 * Moore contends also that the evidence is insufficient to convict him of violation of § 924(c)(1). As a threshold matter, the government contends that our review of this issue is limited because "absent a motion for judgment of acquittal at the close of the government's proof and at the close of all of the evidence, the defendant forfeits his right to challenge the sufficiency of the evidence." Br. of Appellee at 10 (citing United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984)). Moore, however, moved for judgment of acquittal as to the § 924(c) count only after the jury returned a guilty verdict. Thus, the government contends that we are unable to review absent a manifest miscarriage of justice. See Faymore, 736 F.2d at 334.
 
 
 11
 The government is incorrect. Federal Rule of Criminal Procedure 29(c) expressly provides as follows:
 
 
 12
 If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged.... It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.
 
 
 13
 Furthermore, the advisory committee note both restates the rule and explains the policy behind it:
 
 
 14
 A motion for judgment of acquittal may be made after discharge of the jury whether or not a motion was made before submission to the jury. No legitimate interest of the government is intended to be prejudiced by permitting the court to direct an acquittal on a post-verdict motion. The constitutional requirement of a jury trial in criminal cases is primarily a right accorded to the defendant.
 
 
 15
 Fed.R.Crim.P. 29(c) advisory committee's note.
 
 
 16
 The government takes the holding of Faymore and similar cases out of context. Read in the light of Rule 29(c), Faymore holds only that a single motion for judgment of acquittal at the close of the government's case does not preserve the claim of insufficiency of evidence for review. The motion must be renewed at the close of all the evidence, Faymore, 736 F.2d at 334, or renewed after the jury verdict. Fed.R.Crim.P. 29(c). In the absence of a motion at the close of the government's case or at the close of all the evidence, however, the defendant may move for acquittal for the first time after the jury verdict. Fed.R.Crim.P. 29(c) & advisory committee's note.
 
 
 17
 In the case of a single post-verdict motion, the claim of insufficiency of evidence is certainly preserved for review. Our sole interest as a reviewing court is that the district court be first afforded the opportunity to rule on the sufficiency of the evidence presented. This is consonant with the district court's role as a trier of fact. Once the district court has ruled on the sufficiency of all the evidence, whether at the close of all the evidence or after the jury's verdict, the issue is properly presented for our review.
 
 B
 
 18
 We now turn to the substance of Moore's claim regarding the sufficiency of the evidence. Specifically, he argues that the government has not proven that his possession was "in relation to" the drug offense.
 
 
 19
 "A conviction under section 924(c)(1) will withstand appellate review 'if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction....' " United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990) (quoting United States v. Payero, 888 F.2d 928, 929 (1st Cir.1989)). Nonetheless, "[h]owever broadly it may be construed, section 924(c)(1) will not support conviction for mere possession of a firearm during the course of criminal conduct." Id. at 224.
 
 
 20
 In the case at bar, the evidence reasonably supports the conclusion that Moore was in possession of an unloaded pistol, crack cocaine, and cash. The sole evidence of intent, however, is the investigator's testimony as to the modus operandi of drug dealers. Nonetheless, a reasonable trier of fact could have found that this evidence proved that the defendant intended to have the gun available for use during a drug transaction. The prosecution is not required to make a "concrete showing that blends the gun, the crime, and the defendant's specific intentions into the conduct that constituted the predicate offense." Id. at 225.
 
 
 21
 Moore contends that the result here should be different because the gun was unloaded. The Fifth Circuit addressed this issue in United States v. Coburn, 876 F.2d 372 (5th Cir.1989). There, the defendant was operating a pickup truck with a .410 gauge shotgun on a gun rack in the rear window. "The gun was unloaded and there were no shells for it in the vehicle." Id. at 373. A close search of the vehicle revealed 218 pounds of marijuana in a compartment inside the gas tank. The defendant was convicted of violating 21 U.S.C. § 841(a)(1), possession of marijuana with intent to distribute, and 18 U.S.C. § 924(c)(1), using the firearm in relation to the drug trafficking offense. 876 F.2d at 373.
 
 
 22
 On appeal, the defendant attacked the sufficiency of the evidence. The court noted in its analysis that "the government had to prove as an essential element of the offense that a relationship existed between the .410 shotgun and the underlying drug trafficking offense." Id. at 375. The court then noted that "[t]he fact that a firearm is 'unloaded' or 'inoperable' does not insulate the defendant from the reach of section 924(c)." Id. Finally, the court affirmed the conviction, reasoning as follows:
 
 
 23
 It was not unreasonable for the jury to infer from the evidence that the shotgun displayed in the rear window of the pickup truck "emboldened" Coburn, allowing her to display the weapon to protect herself or to intimidate those whom she might meet in the course of distributing the marihuana.
 
 
 24
 Id.; see also United States v. Martinez, 912 F.2d 419, 421 (10th Cir.1990) (holding "that the use of a firearm, even an unloaded one, in connection with a crime of violence or drug trafficking falls within the prohibitions of section 924(c)").
 
 
 25
 In the instant case, the jury was free to infer that Moore possessed the firearm so that he could display it if necessary to intimidate others or to safeguard the drugs that he had in his possession. Accordingly, Moore's § 924(c) conviction is supported by sufficient evidence, and his claim of error is without merit.
 
 IV
 
 26
 For the foregoing reasons, the decision of the district court is AFFIRMED.