UNITED STATES of America,
Plaintiff–Appellee,

v.

Solomon E. BURNETTE, Defendant–
Appellant.

No. 99–6342.

United States Court of Appeals,
Sixth Circuit.

Oct. 10, 2001.

384

Before DAUGHTREY and GILMAN, Circuit Judges; COHN, District Judge.[*]

## OPINION

GILMAN, Circuit Judge.

Solomon E. Burnette was arrested on August 19, 1994 after selling crack cocaine to an undercover police officer. He was subsequently indicted for unlawfully possessing a firearm on two separate occasions, possessing crack cocaine with the intent to distribute, and carrying a firearm during a drug trafficking offense. The jury found Burnette guilty on all counts. He was subsequently sentenced by the district court to 387 months in prison, followed by three years of supervised released. Burnette appeals, challenging both his conviction and sentence on numerous grounds. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On the evening of June 29, 1994, police officers were investigating a complaint about drug dealing near the intersection of Baskin and Halcomb streets in Memphis. The officers observed at least three men engaging in what appeared to be drug transactions. When the officers approached these men and identified themselves as police officers, the men fled. Two of the men ran south and one ran north.

Lieutenant Lawrence Johnson, who was in radio contact with the other police officers, was driving a police van when he saw a man running north from the intersection of Baskin and Halcomb streets. Johnson exited his vehicle and chased the man. While pursuing the suspect, Johnson identified himself as a police officer and told the man to stop. The man turned and fired gunshots at Johnson. Johnson returned the gunfire, but the man escaped. Soon thereafter, near the scene of the gunfire exchange, police officers recovered a recently discharged handgun that was covered with blood. Johnson later identified Burnette as the man who fired the gunshots at him.

On the same night, Darnell Ousley, a guard at the Shelby County Correctional Center who lived near the intersection of Baskin and Halcomb streets, saw a man running through his yard. Ousley recognized the man as someone who had been incarcerated at the Shelby County Correctional Center. Ousley later identified Burnette as the man he saw running through his yard.

On July 12, 1994, two Memphis police officers saw Burnette sitting on the porch of a vacant house near the intersection of Baskin and Halcomb streets. Burnette

* The Honorable Avern Cohn, Senior District Judge for the Eastern District of Michigan, sitting by designation.

fled as the officers approached, firing gunshots at them as he retreated.

On August 19, 1994, an undercover police officer purchased crack cocaine from Burnette. Following the transaction, another police officer approached Burnette and attempted to arrest him. Burnette fled into a nearby apartment building. After chasing Burnette into one of the apartments, the police officer found him in the bathroom next to a toilet that was in the process of being flushed. The officer found marked money in Burnette's front right pants pocket and an unloaded firearm in his front left pants pocket.

## B. Procedural background

Burnette was indicted on the following four counts: (1) possession of a firearm on June 29, 1994, in violation of 18 U.S.C. § 922(g), (2) possession of a firearm on August 19, 1994, in violation of 18 U.S.C. § 922(g), (3) possession with intent to distribute crack cocaine on August 19, 1994, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and (4) carrying a firearm during a drug trafficking offense on August 19, 1994, in violation of 18 U.S.C. § 924(c). Burnette's original trial commenced on July 15, 1996 and concluded on July 19, 1996. After the jury found him guilty on all four counts, the district court sentenced him to 387 months in prison, followed by five years of supervised release. Burnette filed a timely appeal.

On April 13, 1999, a prior panel of this court reversed Burnette's conviction based on the panel's conclusion that the district court erred in admitting the police officers' testimony that Burnette had fired gunshots at them during the incident on July 12, 1994. *United States v. Burnette*, No. 97–5467, 1999 WL 238652 (6th Cir. Apr.13, 1999) (unpublished table decision). The case was thus remanded for a new trial. Retrial commenced on August 2, 1999 and concluded on the following day. The jury again found Burnette guilty on all four counts. He was given the same sentence of 387 months in prison, but his term of supervised release was shortened to three years. This timely appeal followed.

## II. ANALYSIS

A. The district court did not commit plain error by allowing the government to introduce evidence of Burnette's July 12, 1994 flight to show consciousness of guilt

Burnette argues that the district court erred by admitting evidence that, on July 12, 1994, police officers saw him sitting on the porch of a vacant house, that he waved at the officers, and then fled in order to avoid arrest. He argues that this evidence of uncharged misconduct is not admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides that evidence of other acts is "not admissible to prove the character of a person in order to show action in conformity therewith...." Such evidence, however, may be admissible for other purposes, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Id.*

Because Burnette did not object to the introduction of this evidence at trial, we review its admission under the plain error standard set forth in Rule 52(b) of the Federal Rules of Criminal Procedure. This court has described the plain error analysis as consisting of four inquiries: (1) whether an error actually occurred in the district court, (2) the obviousness of that error, (3) whether the error affected substantial rights, and (4) whether the compromise of substantial rights seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Thomas,* 11 F.3d 620, 629–30 (6th Cir.1993).

■ Our inquiry begins with an examination of whether the district court erred in determining that the evidence was admissible for a legitimate purpose. Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for a legitimate purpose, (2) the purpose for which the evidence is offered is material or "in issue," and (3) the evidence is probative with regard to the purpose for which it is offered. *United States v. Johnson,* 27 F.3d 1186, 1190–93 (6th Cir.1994) (finding that evidence of the defendant's prior drug sales was probative of his intent to distribute cocaine on the date charged).

The government argues that the evidence was admissible because Burnette's flight showed consciousness of guilt. Evidence of flight has been held admissible as an admission of guilt by conduct. *United States v. Dillon,* 870 F.2d 1125, 1126 (6th Cir.1989). The evidence was thus offered for a legitimate purpose.

We must next determine whether the purpose for which the evidence was offered was material or "in issue." Clearly, the question of whether Burnette was guilty of being a felon in possession of a firearm on June 29, 1994, in violation of 18 U.S.C. § 922(g), was "in issue" at trial.

Because the proffered evidence was offered for a legitimate purpose that was "in issue" at trial, we must finally determine whether the evidence was probative with regard to the purpose for which it was offered. "[T]he probative value of flight evidence 'depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." ' *Dillon,* 870 F.2d at 1127 (citation omitted). "All four inferences must be reasonabl[y] support[ed] by the evidence." *Id.* (citation and internal quotation marks omitted). "For flight evidence to be admissible, the timing of the flight must itself indicate the sudden onset or the sudden *increase* of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged." *Id.* at 1128 (emphasis in the original).

In the present case, these four inferences can reasonably be drawn. First, Burnette ran from the porch of a vacant house when police officers approached him. One could reasonably infer that his running constituted flight. Second, Burnette's flight suggests a sudden increase of fear that he was facing apprehension for a prior offense. We can also reasonably infer that the consciousness of guilt concerned the crime that had occurred two weeks earlier because the vacant house was in the same neighborhood as the prior incident. Finally, from his flight, it can reasonably be inferred that Burnette was actually guilty of the crime committed on June 29, 1994. We therefore conclude that the district court did not err in holding the evidence admissible for a legitimate purpose. Moreover, because the danger of unfair prejudice was minimal, we also conclude that the balancing required by Rule 403 of the Federal Rules of Evidence does not weigh in Burnette's favor.

■ Even if we were to hold that the district court erred in admitting the evidence of Burnette's flight, that decision did not constitute plain error. The alleged error is not obvious, there was overwhelming evidence of Burnette's guilt, and the fairness, integrity, and public reputation of the judicial proceedings were not adverse-

ly affected. *Thomas,* 11 F.3d at 629–630. For all of the above reasons, we hold that the district court did not commit plain error in allowing the government to introduce evidence of Burnette's July 12, 1994 flight to show consciousness of guilt.

### B. The evidence was sufficient to support the jury's verdict on Count 4

▮▮▮ Burnette claims that the evidence was insufficient to support a finding that he physically transported a firearm during the course of his drug trafficking offense or that it was immediately available for use during the crime. We review claims of insufficiency of the evidence by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ables,* 167 F.3d 1021, 1032 (6th Cir.1999) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in the original)). Furthermore, "[c]ircumstantial evidence alone is sufficient to sustain a conviction. . . ." *Id.*

Count 4 charged Burnette with carrying a firearm during a drug trafficking offense on August 19, 1994, in violation of 18 U.S.C. § 924(c). Section 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . carries a firearm . . . shall . . . be sentenced to a term of imprisonment of not less than 5 years. . . ." In order to prove a violation of § 924(c)(1), the government must show that (1) the defendant carried a firearm, and (2) the firearm was carried in relation to a drug trafficking crime. *Id.*

▮▮▮ A defendant can be found to be "carrying" a firearm for purposes of § 924(c)(1) only if the government proves that the defendant physically transported

the firearm and that the firearm was immediately available for use. *United States v. Washington,* 127 F.3d 510, 514 (6th Cir. 1997). In order to show that the firearm was carried "in relation to" a drug trafficking offense, "the Government must prove that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence." *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.1996) (citing *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993)).

Burnette maintains that the government failed to prove that (1) a firearm was in his possession at the time the drug trafficking offense was committed, and (2) the firearm furthered the purpose or effect of the crime. We find this argument unpersuasive in light of the evidence presented at trial.

First, the government introduced sufficient evidence at trial to establish that Burnette was carrying a firearm when he sold crack cocaine on the night of August 19, 1994. The arresting police officer testified that, after pursuing Burnette into a nearby apartment building, Burnette was found with a firearm in his front left pants pocket. Finding the firearm on Burnette's person after a brief chase from the scene of the drug transaction strongly indicates that he had the firearm concealed within his clothing during the drug transaction. When a firearm is hidden in a person's clothing, it is "immediately available for use–on the defendant or within his or her reach." *Wright v. United States,* 182 F.3d 458, 463 (6th Cir.1999) ("[A]n offender 'carries' a firearm when he 'keeps a gun hidden in his clothing throughout a drug transaction.'") (quoting *United States v. Bailey,* 516 U.S. 137, 146, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). As Burnette acknowledges, the fact that the firearm was

unloaded "does not insulate [him] from the reach of section 924(c)." *United States v. Moore*, 91–5720, 1992 WL 44865 *3–4 (6th Cir. March 4, 1992) (unpublished table decision). A rational trier of fact could, therefore, have found that Burnette carried a firearm when he sold crack cocaine on the night of August 19, 1994.

Second, the government introduced sufficient evidence that the firearm "furthered the purpose or effect of the crime" Burnette committed on August 19, 1994 "and that its presence or involvement was not the result of coincidence." This court has held that "the government is not required to show that the defendant displayed or brandished the firearm. Even if a firearm remains hidden throughout a crime, its concealed presence may have been in relation to the crime if it facilitated the crime by emboldening the defendant, giving him security and confidence to undertake the criminal act." *United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990). As a result, a rational trier of fact could have found that the firearm furthered the purpose or effect of the drug trafficking crime Burnette committed on the night of August 19, 1994. We therefore conclude that the evidence was sufficient for a rational trier of fact to find Burnette guilty on Count 4.

C. The district court did not commit plain error in instructing the jury concerning the elements of 18 U.S.C. § 924(c)

Burnette claims that the district court's jury instruction regarding Count 4 was improper for two reasons. First, he maintains that the district court's definition of "carry" only addressed one of the two elements the government had to prove in order to establish that Burnette "carried" a firearm during a drug trafficking offense. Second, Burnette argues that the district court's instruction as to the meaning of "in

relation to" did not adequately set forth the government's burden of proving that the firearm furthered the purpose or effect of the underlying crime.

Burnette failed to object to this jury instruction at trial. We will therefore not disturb the verdict based on the instruction unless we conclude that the instruction constituted plain error. *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992). "Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Piccolo*, 723 F.2d 1234, 1241 (6th Cir.1983).

The district court instructed the jury as follows:

In order for the defendant to be found guilty of this offense, you must find beyond a reasonable doubt four separate elements.

First, that the defendant committed a drug trafficking crime, as charged in Count 3 of the indictment.

Second, that the defendant carried the firearm described in the indictment.

Third, that the defendant knowingly carried the firearm.

And fourth, ladies and gentlemen, that the defendant carried the firearm during and in relation to the drug trafficking crime charged in Count 3.

You are instructed that the crime of possession with the intent to distribute crack cocaine is a drug trafficking crime within the meaning of this particular law.

The term carry, as I have used that term, and as it is used in the statute, or law, means to transport or cause the transportation of a firearm from one place to another.

The term, "during a drug trafficking crime,["] as I have used that term, and as the statute uses the term, means

while a drug trafficking crime is being committed.

Should you find that the government has proved beyond a reasonable doubt that the defendant carried a firearm during the drug trafficking crime alleged in Count 3, you must then resolve the question of whether the government has also proved beyond a reasonable doubt that the firearm was carried by the defendant in relation to that drug trafficking crime.

The term in relation to a drug trafficking crime means having to do with. In order for this phrase, in relation, to be satisfied it must be proved that there existed a relationship between the firearm and the drug trafficking crime charged in Count 3.

The government is not required to prove that the defendant actually fired the weapon charged in Count 4, or in any other count.

■ As noted above, this court has held that a defendant can be found to be "carrying" a firearm only if the defendant physically transported the firearm and the firearm was immediately available for use. *United States v. Washington,* 127 F.3d 510, 514 (6th Cir.1997). The district court instructed the jury that "carrying" "means to transport or cause the transportation of a firearm from one place to another." Although the district court did not instruct the jury that, in order to find that Burnette was "carrying" the firearm, it had to be "immediately available for use," we conclude that this omission does not constitute plain error under the facts of this case. A finding that Burnette was transporting the firearm from one place to another on foot would necessarily imply that the firearm was on his person and, therefore, was "immediately available for use." A properly instructed jury could therefore have found that Burnette "carried" a firearm for purposes of § 924(c).

"[I]n order to show that a firearm has been used or carried 'in relation to' a drug trafficking offense, the Government must prove that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence." *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.1996) (citing *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993)). The district court instructed the jury that "[t]he term in relation to a drug trafficking crime means having to do with. In order for this phrase, in relation, to be satisfied it must be proved that there existed a relationship between the firearm and the drug trafficking crime. . . ."

■ Although the district court failed to instruct the jury that it could find that Burnette was carrying a firearm "in relation to" a drug trafficking offense only if the firearm furthered the purpose or effect of the underlying crime, no plain error occurred. A finding that Burnette was carrying a firearm "having to do with" a drug trafficking offense would, given the facts of this case, necessarily imply that the firearm furthered the purpose or effect of the underlying crime. Indeed, given the risks of selling illegal drugs, it is difficult to imagine a scenario where carrying a firearm under the circumstances before us would not further the purpose or effect of a drug transaction. A properly instructed jury could therefore have found that the firearm Burnette was carrying furthered the purpose or effect of the underlying drug trafficking crime and that its presence or involvement was not the result of coincidence.

For all of the above reasons, and in light of the overwhelming evidence of Burnette's guilt, we conclude that the jury instruction was not "so clearly erroneous as to likely produce a grave miscarriage of justice." *Piccolo,* 723 F.2d at 1241.

D. The law-of-the-case doctrine bars consideration of whether the district court committed plain error by admitting into evidence two allegedly suggestive photo spreads

 Burnette claims that the photo spreads introduced by the government at trial were impermissibly suggestive because the photograph of him was the only one that showed an individual with a gheri curl hair style. Although he did not object to the introduction of this evidence at his 1999 retrial, he did file a motion to suppress the photo spreads during his first trial. This motion was denied by the district court, and Burnette did not raise the issue in his prior appeal.

"The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida,* 129 F.3d 846, 850 (6th Cir.1997) (citation omitted). "Although the doctrine of law of the case is not an inexorable command, and courts must use common sense in applying it, the power of this court to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions." *Craft v. United States,* 233 F.3d 358, 363–64 (6th Cir.2000) (citations and internal quotation marks omitted), *cert. granted,* —— U.S. ——, 122 S.Ct. 23, 150 L.Ed.2d 804 (2001). Because Burnette has not claimed that any such "extraordinary conditions" apply in this case, we conclude that the law-of-the-case doctrine bars Burnette's challenge to the admission of the photo spreads into evidence.

E. The district court did not commit plain error in sentencing Burnette as an armed career criminal pursuant to 18 U.S.C. § 924(c)

 Burnette claims that the district court applied the armed career criminal

sentencing enhancement of United States Sentencing Guidelines § 4B1.4 even though he does not have the requisite three previous convictions for a violent crime. Section 924(e)(1) provides in pertinent part as follows: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony ..., such person shall be ... imprisoned not less than fifteen years ...." A "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year ... that–
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

18 U.S.C. § 924(e)(2)(B). United States Sentencing Guidelines § 4B1.4 applies in the case of a defendant subject to an enhanced sentence under 18 U.S.C. § 924(e) and sets the offense level at 34 "if the defendant used or possessed the firearm ... in connection with a ... controlled substance offense...." U.S. Sentencing Guidelines Manual § 4B1.4(b)(3)(A).

Burnette concedes that he has two prior convictions that qualify as "violent felonies" pursuant to § 924(e)(1). He argues, however, that his 1992 conviction for attempted aggravated burglary does not qualify as a predicate felony because the crime was not "burglary, arson, or extortion," did not involve "the use, attempted use, or threatened use of physical force" against a person, and did not "involve conduct that present[ed] a serious potential

risk of physical injury to another." In support of his argument, Burnette describes the specific conduct for which he was convicted in 1992.

Where, as in this case, a defendant fails to object to a sentencing enhancement prior to his appeal, his sentence will not be disturbed unless the enhancement is found to constitute plain error. *See United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998). "[T]he determination whether a defendant's prior conviction involves a 'violent felony' ... is to be decided ... by reference to the statute under which it was obtained." *United States v. Lane,* 909 F.2d 895, 901 (6th Cir.1990) (citation and internal quotation marks omitted). We must therefore look to the statute applicable to Burnette's conviction, and not to his actual conduct during the commission of the crime.

In *United States v. Bureau,* 52 F.3d 584, 593 (6th Cir.1995), this court held that "the crime of attempting to commit the felony of burglary under Tennessee law involves conduct that presents a serious risk of physical injury to another and falls within the 'otherwise clause' of § 924(e)." Burnette's conviction for attempted aggravated burglary thus qualifies as a "violent felony" pursuant to § 924(e)(2)(B)(ii).

Based on the above analysis, we conclude that Burnette had been convicted of three "violent felonies" prior to his indictment on the charges in the present case. The district court, therefore, did not commit plain error in sentencing Burnette as an armed career criminal pursuant to 18 U.S.C. § 924(c).

F. *Apprendi is not applicable to the present case*

Burnette contends that the district court erred by not requiring that the enhancements to his sentence be alleged in the indictment, submitted to the jury, and proved beyond a reasonable doubt as elements of the offense charged. He bases his challenge on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was decided a year after his second trial. The Supreme Court established in *Apprendi* that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348 (emphasis added). As a result, *Apprendi* did not overrule the Supreme Court's holding in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that Congress may treat the prior conviction of a crime as a sentencing factor to be determined by the court. *Apprendi,* 530 U.S. at 489–90, 120 S.Ct. 2348; *United States v. Gatewood,* 230 F.3d 186, 192 (6th Cir.2000) (noting that *"Almendarez–Torres* remains the law"). In the present case, Burnette's sentence was enhanced under the Armed Career Criminal Act because of his prior convictions. Burnette is therefore not entitled to relief under *Apprendi.*

Moreover, *Apprendi* only applies to those situations where a factual determination made under a lesser standard of proof than the reasonable doubt standard "increases the penalty for a crime beyond the statutory maximum." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Although § 924(e) does not specify a maximum term of imprisonment, it has been construed to authorize a life sentence. *Custis v. United States,* 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *U.S. v. Caldwell,* No. 97–5252, 2000 WL 331950 at *8 n. 3 (6th Cir. Mar 23, 2000) (unpublished table decision) ("The ACCA raises the penalty for possession of a firearm by a felon from a maximum of ten (10) years in prison to a mandatory minimum of fifteen (15) years

and a maximum of life in prison without parole if the defendant has 'three previous convictions ... for a violent felony or a serious drug offense.'") (citing 18 U.S.C. § .924(e)), *cert. denied,* 531 U.S. 867, 121 S.Ct. 162, 148 L.Ed.2d 109 (2000); *see also United States v. Mack,* 229 F.3d 226, 234 n. 12 (3d Cir.2000) (holding that *Apprendi* is not applicable to sentences imposed pursuant to 18 U.S.C. § 924(e) because the statutory maximum is life imprisonment), *cert. denied,* —— U.S. ——, 121 S.Ct. 2015, 149 L.Ed.2d 1016 (2001). For these reasons, *Apprendi* is not applicable to the present case.

G. The district court did not commit plain error in applying United States Sentencing Guidelines § 2K2.1(b)(5)

■■■ Burnette asserts that the district court's imposition of the specific-offense-characteristic enhancement listed in United States Sentencing Guidelines § 2K2.1(b)(5) to determine his adjusted offense level constitutes impermissible "double counting." Because Burnette did not object to the presentence report or to his sentencing by the district court, his sentence will not be disturbed unless the enhancement is found to constitute plain error. *United States v. Fountain,* 2 F.3d 656, 669–70 (6th Cir.1993) ("Absent 'plain error,' this court will not address claims of alleged misapplication of the guidelines unless the defendant first raised the claim before the district court.").

Section 2K2.1(b)(5) provides that a base offense level may be increased by four levels if the defendant "used or possessed any firearm ... in connection with another felony offense...." The district court increased the base offense level for Count 1 by four levels pursuant to § 2K2.1(b)(5). The resulting adjusted offense level was 31. After deciding that Counts 2 and 3 should be grouped together pursuant to

United States Sentencing Guidelines § 3D.1.2(c), the district court also increased the base offense level for the combined Counts 2 and 3 by four levels pursuant to § 2K2.1(b)(5). The resulting adjusted offense level was 28.

These enhancements, however, did not affect Burnette's sentence. United States Sentencing Guidelines § 4B1.4 applies in the case of a defendant subject to an enhanced sentence under 18 U.S.C. § 924(e), and sets the offense level at 34 "if the defendant used or possessed the firearm ... in connection with a ... controlled substance offense...." U.S. Sentencing Guidelines Manual § 4B1.4(b)(3)(A). Because this enhancement applies to Burnette, his base offense level was 34 without any consideration of § 2K2.1(b)(5). Thus, even if the district court had not applied the challenged enhancements, Burnette still would have been sentenced to 262–327 months in prison for Counts 1 to 3, plus an additional 60 months for Count 4. We therefore conclude that the district court did not commit plain error in applying United States Sentencing Guidelines § 2K2.1(b)(5), because Burnette's substantial rights were not adversely affected. *United States v. Thomas,* 11 F.3d 620, 629–30 (6th Cir.1993).

H. The district court did not commit plain error by failing to disclose the revised presentence report to Burnette at least 35 days before the sentencing hearing

■■■ Finally, Burnette claims that the district court violated Rule 32(b)(6) of the Federal Rules of Criminal Procedure by failing to furnish him with a copy of the revised presentence report at least 35 days before the sentencing hearing. Rule 32(b)(6)(A) requires that the presentence report be furnished to the defendant "[n]ot less than 35 days before the sentencing

hearing–unless the defendant waives this minimum period...." In the present case, the record indicates that the revised presentence report was prepared on August 31, 1999, eight days before the sentencing hearing.

The original presentence report in this case, however, was prepared in September of 1996, approximately three years before Burnette's sentencing hearing. Although the report was revised on August 31, 1999, the revised report did not include any new sentencing calculations or any new information that would adversely impact Burnette's sentence. Furthermore, because counsel for the defendant did not object to the timing of the revised report or ask that the sentencing hearing be continued, Burnette waived any objections he might have had pursuant to Rule 32(b). *United States v. Jones,* 80 F.3d 436, 438 (10th Cir.1996) (concurring with the three United States Courts of Appeals that had already held that a defendant waives the minimum period by participating in the sentencing hearing without objection). For these reasons, we conclude that the district court did not commit plain error by failing to disclose the revised presentence report to Burnette at least 35 days before the sentencing hearing.

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.