UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Jerome DILLON,
Defendant–Appellant.

No. 88–3226.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 3, 1989.
Decided March 27, 1989.

William E. Hunt, Cincinnati, Ohio, for plaintiff-appellee.

Frederick L. Baker, Westerville, Ohio, for defendant-appellant.

Before MERRITT and MILBURN, Circuit Judges; and LIVELY, Senior Circuit Judge.

MERRITT, Circuit Judge.

Appellant Thomas J. Dillon was indicted for, and convicted of, various drug offenses: 21 U.S.C. § 841(a)(1) (distribution of cocaine); 21 U.S.C. § 846 (conspiracy to possess cocaine with intent to distribute it); 21 U.S.C. § 843(b) (use of telephone to facilitate the crimes of conspiracy and distribution). He appeals on two grounds: (1) that the District Court erred by admitting evidence of his flight and by giving the jury an instruction on flight; and (2) that the District Court erred when it refused to exclude a juror when it appeared that her husband was attending the trial. Because we see no reason to find error in either matter, we affirm Dillon's conviction.

## EVIDENCE OF FLIGHT

█ Flight evidence comes in as an admission of guilt by conduct. Cleary,

*McCormick on Evidence* § 271, at 803 (3d ed.1984). The Supreme Court has expressed scepticism as to its value:

> [W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime. In *Alberty v. United States*, 162 U.S. 499, 511, [16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896)] this Court said: "... it is not universally true that a man, who is conscious that he has done a wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper,' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.'"

*Wong Sun v. United States*, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963). Where evidence of flight has genuine probative value, however, it is "generally admissible as evidence of guilt, and ... juries are given the power to determine 'how much weight should be given to such evidence.'" *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir.1984) (quoting *United States v. Craig*, 522 F.2d 29, 32 (6th Cir.1975)). The task for a District Court in determining whether to admit evidence of flight, thus, is to determine whether the proferred evidence in fact tends to prove guilt and not merely the terror that may befall an innocent person confronted by the criminal justice system, and whether the evidence, even if probative of guilt, is so prejudicial that its admission offends Fed.R.Evid. 403. Our task is to review those determinations for an abuse of discretion. *United States v. Hernandez–Bermudez*, 857 F.2d 50, 53 (1st Cir. 1988); *United States v. Lepanto*, 817 F.2d 1463, 1467 (10th Cir.1987).

█ The Fifth Circuit has devised a four-step analysis of flight evidence that, as

many courts have recognized, allows an orderly inquiry into the inferences proposed by evidence of flight. *United States v. Kord,* 836 F.2d 368, 372 (7th Cir.), *cert. denied* ── U.S. ──, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988); *United States v. Guerrero,* 756 F.2d 1342, 1347 (9th Cir.), *cert. denied sub nom. Booth v. United States,* 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 and *sub nom. Kessler v. United States,* 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984); *United States v. Ramon–Perez,* 703 F.2d 1231, 1232 n. 1 (11th Cir.), *cert. denied* 464 U.S. 841, 104 S.Ct. 136, 78 L.Ed.2d 130 (1983); *United States v. Beahm,* 664 F.2d 414, 420 (4th Cir.1981); *United States v. Peltier,* 585 F.2d 314, 323 (8th Cir.1978), *cert. denied* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *United States v. Jackson,* 572 F.2d 636, 639 (7th Cir.1978). According to this formulation, the probative value of flight evidence

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977), *cert. denied* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). All four inferences must be "reasonabl[y] support[ed]" by the evidence. *Myers,* 550 F.2d at 1050.

> In the present case, Dillon was charged with, and convicted of, supplying Edward Knezevich with cocaine between December 1982 and March 26, 1983. Knezevich obtained a pound of cocaine from Dillon on the latter date and sold it, through a pre-arranged deal, to Sheila Bezotsky. Bezotsky was cooperating with the FBI, and Knezevich was arrested when he delivered the cocaine to her. All those events took place in Columbus, where Dillon then lived.

Knezevich was eventually convicted for his role in this deal. After his convic-tion he was subpoenaed to testify before a Grand Jury. On December 19, 1984, Knezevich told Dillon that he would testify the next day before a Grand Jury, and that he intended to tell the truth about Dillon's role in the cocaine deal. Tr. II–82. Knezevich also testified that, as part of his agreement with the government, he would attempt to contact Dillon, wearing a hidden tape recorder, on December 20; that he had tried to find Dillon; and that he had failed to find him. Tr. II–82–83.

Dillon's ex-wife testified that Dillon did not keep his engagement to take custody of their children, on Christmas day. Tr. IV–29–30. She also testified that, ever since that day and for the next two years, Dillon contacted her only by phone, and that she had no way of knowing whether he was in Columbus or not. Tr. IV–32–33.

Dillon was arrested in Florida in June 1987. The FBI agent who arrested him testified that he was living there under an assumed name. Tr. IV–36–37. There is no evidence that he denied to the FBI agent arresting him that he was Thomas Dillon. He was indicted on the present charges on July 30, 1987.

At trial, the government attempted to prove that Dillon had fled Columbus after learning about Knezevich's planned Grand Jury testimony, and that such a flight proved Dillon's awareness of his guilt of the crimes charged. Dillon preserved his appeal from the admission of evidence of flight by timely objections at trial. He seeks to persuade this Court that his departure from Columbus came at least two years after the alleged offense and well before the indictment was filed, so that he had "nothing to flee from." Appellant's Brief at 8. To accept this argument we would have to ignore the crucial fact that the government adduced evidence suggesting that Dillon fled Columbus within days after hearing from a co-conspirator that the co-conspirator was about to implicate Dillon in a big cocaine deal in Grand Jury testimony. The real question before us is whether the evidence, *including* Dillon's December 19 conversation with Knezevich, his unexplained failure to keep his Christ-

mas plans with his children, and his subsequent phone rather than personal contacts with his ex-wife, are sufficiently probative of a guilty conscience to overcome the prejudice it entails. We conclude that the four *Myers* inferences are all adequately supported by the evidence introduced at Dillon's trial.

The first question is whether the evidence supports the inference that there has been a "flight" in the first place. The *Myers* court found that no such inference was allowable where the jury could infer flight only by resort to "conjecture and speculation." *Myers*, 550 F.2d at 1050. We believe that the evidence before Dillon's jury allowed a sound inference, not merely a speculative one, that he had fled. Dillon's ex-wife testified that, only six days after hearing from Knezevich about the latter's planned Grand Jury testimony, he broke an important family commitment and from then on contacted her by phone from an undisclosed location. He was arrested in Florida, where he was living under an assumed name. We do not believe it would be unreasonable for a jury to infer from these undisputed facts that Dillon fled Columbus soon after his conversation with Knezevich.

■ In this case, the second and third inferences—(2) that the defendant is afflicted with a guilty consciousness (3) of the crime charged—involve examination of two interrelated factors: immediacy and the defendant's knowledge that he is in trouble with the law. For flight evidence to be admissible, the timing of flight must itself indicate the sudden onset or the sudden *increase* of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged. Flight immediately after the crime charged, of course, will tend to prove guilt of that crime. *See Myers*, 550 F.2d at 1051. But the mental crisis that precipitates flight may fail to occur immediately after the crime, only to erupt much later, when the defendant learns that he or she is charged with the crime and sought for it. *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106–07 (9th Cir.1979) (flight

immediately after crime is important only where defendant does not know, or might not know, of charges against him); *United States v. Jackson*, 572 F.2d at 640–41 (immediacy may become irrelevant where defendant knows she is charged and sought).

We reject Dillon's argument that these cases allow introduction of evidence of a postponed flight only when that flight occurs after the defendant learns of the charges against him or her. Rather, these cases recognize that flight may be proven where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind. This might occur long after the defendant learns of the charges, as it did in *Touchstone*, where defendants did not flee until the heat of trial became unbearable. *Touchstone*, 726 F.2d at 1120. And it can occur long before the defendant learns of the charges: for instance, when flight occurs after the defendant is served, himself, with a subpoena to appear before a Grand Jury. *United States v. Grandmont*, 680 F.2d 867, 869–70 (1st Cir.1982). Indeed, the "commencement of an investigation" may substitute for accusation as the precipitating event. *United States v. Beahm*, 664 F.2d at 420 (*dictum*).

Dillon argues that he departed Columbus a year and nine months after the crime at the earliest, that the indictment was issued after his arrest, and that nothing in the interim constitutes notice of the sort that courts have recognized as a substitute for immediacy-after-the-crime. This reasoning ignores the December 19 conversation with Knezevich and urges a wooden and literalistic reading of the case law. Common sense on this question is loud and clear: a guilty defendant is almost as unequivocally put on notice of his peril by a convicted co-conspirator who is on the verge of testifying before a Grand Jury about their common crime, as he would be by hearing from someone that he is charged and sought. We see no flaws in an inference from such notice to the defendant's guilty consciousness of the crime charged.

Dillon raises no argument that the fourth *Myers* inference—from guilty conscious-

ness to actual guilt—is unsupported by record evidence. We, therefore, hold that the District Court did not abuse its discretion in admitting evidence of flight at Dillon's trial. This conclusion forecloses any argument that the District Judge erred in deciding to give an instruction on flight to the jury. Because Dillon's objection at trial, Tr. V–13, and on appeal, is not to the content of the instruction on flight but to the fact that it was given at all, we conclude that Dillon's appeal on flight fails in its entirety.

## JUROR CONTACTS

 Dillon, through his attorney, objected to the District Judge's failure to strike a juror when it was revealed that her husband was driving her to and from the courthouse for 160 miles each day and attending the proceedings. Tr. IV–24. The District Court found that, though the juror was exposed to her husband's company for hours each day, and though her husband was attending the trial, the juror credibly denied that they had ever discussed the case. As the case reaches this Court, then, it contains a record finding that *there has been no contact* between the juror and any outsider. Such a finding of fact is well within the powers of a District Judge, and on review is to be rejected only if it is clearly erroneous. Fed.R.Civ.P. 52(a). We see no error here. The District Judge conducted a painstaking *in camera* interview with the juror, had the record of that interview read to Dillon's counsel and the prosecutor and invited their arguments, and made a specific, well reasoned finding that the juror credibly asserted that she had never discussed the case with her husband or anyone else. Tr. IV–19–25.

We must reject Dillon's proposed rule that, when a juror is intimately and continuously in the company of an outsider, an impermissible contact will be presumed to have taken place. Such a presumption would squander the fact-finding resources of federal district courts. And even if the presumption were required in this case, it would not erode the District Court's discretion to decide that, notwithstanding the

presumed contacts, the juror could render an impartial verdict. Even where threatening contacts have been incontestably demonstrated, the trial court retains the discretion to refuse a mistrial motion if it concludes that the threatened jurors can continue to serve impartially. *United States v. Pennell*, 737 F.2d 521, 533–34 (6th Cir. 1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985).

We conclude that the District Court properly allowed the government to introduce evidence of flight, read the jury an instruction on flight, and refused to strike the challenged juror. Accordingly, Dillon's judgment of conviction is affirmed.