RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellant,*

*v.*

DANIEL BRUCE LADEAU,

  *Defendant-Appellee.*

No. 12-6611

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cr-00242-1—John T. Nixon, District Judge.

Argued: October 3, 2013

Decided and Filed:  November 4, 2013

Before:  ROGERS, GRIFFIN, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Cecil Woods VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant.  Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee.  **ON BRIEF:** J. Alex Little, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.  Defendant Daniel Bruce LaDeau was indicted on a single count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(A).  This charge prescribed a sentencing range of zero to ten years' imprisonment.  Subsequently, LaDeau moved to suppress the evidence that he had any such materials in his possession.  After the district court granted LaDeau's motion to

1

suppress, the government sought and obtained a superseding one-count indictment charging LaDeau with a conspiracy offense based on evidence that had been in the government's possession since before the initial indictment. But rather than charging LaDeau in the superseding indictment with conspiring to *possess* child pornography, the government chose to charge him with conspiring to *receive* child pornography—a charging decision that subjected LaDeau to a five-to-twenty-year prison term instead of the previously applicable statutory range of zero to ten years. Defendant LaDeau then moved to dismiss the superseding indictment. The district court agreed with LaDeau that the government's decision to change to a receipt theory warranted a presumption of prosecutorial vindictiveness, inasmuch as there was a realistic likelihood that LaDeau was being charged with a more serious offense in retaliation for his successful suppression motion. Concluding that the government had not rebutted the presumption of vindictiveness, the district court dismissed the superseding indictment. The government filed this appeal. Because the district court did not abuse its discretion in dismissing the superseding indictment, we affirm.

I.

In April 2010, letters sent between LaDeau and his then-jailed brother, David LaDeau, came to the attention of authorities. The letters, written in code, allegedly contained communications between the brothers about ways to obtain and conceal child pornography.

Law enforcement officials executed a search warrant at defendant Daniel LaDeau's residence in August 2010. There, investigators discovered several USB flash drives (or "thumb drives") containing what appeared to be child pornography. After the search, LaDeau was indicted on one charge of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(A). This charge carried a statutory sentencing range of zero to ten years' imprisonment. *See* 18 U.S.C. § 2252A(b)(2).

LaDeau's initial motion to suppress the evidence recovered from his residence was denied by the district court. In March 2011, LaDeau filed a supplemental motion to suppress several inculpatory statements, as well as the thumb drives and other

physical evidence seized from his residence. In relevant part, LaDeau asserted that officers executing the search warrant, who had interviewed LaDeau in a hospital while he was attending to his ailing wife, improperly coerced his responses by threatening to inform his wife about their investigation moments before she underwent life-threatening surgery. In September 2011, the district court granted LaDeau's motion to suppress and excluded his inculpatory statements and the thumb drives in question. After this evidence was suppressed, there was no longer any admissible evidence that LaDeau had possessed any child pornography.

Trial was scheduled to begin on November 15, 2011, but on November 10, the government obtained a superseding indictment. The superseding indictment added LaDeau's brother, David, as a codefendant and charged both brothers with conspiracy to receive child pornography, in violation of 18 U.S.C. § 2252A(a)(2)—a charge that carries a five-year mandatory minimum sentence and a statutory sentencing range of five to twenty years in prison. *See* 18 U.S.C. § 2252A(b)(1).[1]

Defendant Daniel LaDeau moved to suppress the superseding indictment for prosecutorial vindictiveness, pointing out that the new charge was not based on any new evidence that the government obtained after the initial indictment. According to LaDeau, the government could have charged him with the harsher receipt offense at any point during the thirteen months in which his prosecution had been pending, but had chosen to do so only after LaDeau won his suppression motion. In LaDeau's view, the government had no good reason to change its theory of the case at that point, meaning that the government's conduct was a presumptively retaliatory response to his successful motion to suppress.

After a hearing on the matter, the district court agreed with LaDeau and entered an order in which it found both (1) that the presumption of vindictiveness was triggered on the facts of the case and (2) that the government had failed to rebut the presumption. Specifically, the district court found that the government had a significant stake in the

---

[1] Prior to prevailing on the motion to suppress, LaDeau's counsel had estimated that LaDeau could have faced a Guidelines range of approximately thirty-seven to forty-six months on the possession charge.

outcome of LaDeau's suppression motion, that it was unreasonable for the government to indict LaDeau for a receipt conspiracy when a possession conspiracy charge was available and would have subjected him to an identical statutory sentencing range as that carried by the charge in the initial indictment, and that the government's "conclusory" arguments did not serve to rebut the presumption of vindictiveness.

The government moved the district court to reconsider its ruling, proffering an affidavit in which the government asserted that the Assistant United States Attorney who had been prosecuting LaDeau's case had intended all along to supersede with a conspiracy-to-receive charge but had simply not done so until after the successful motion to suppress, some thirteen months after the original indictment had been returned. The affidavit gave no explanation for the thirteen-month delay; it simply indicated that the initial indictment had been hastily procured "due to time considerations" and asserted that no member of the United States Attorney's office "would seek to retaliate against a defendant because he or she has filed a motion to suppress." The district court denied the government's motion to reconsider, and the government filed this appeal.

II.

The first disagreement between the parties concerns the proper standard of review. Although the government requests that we review de novo, we have previously concluded that the ultimate decision whether to dismiss an indictment for prosecutorial vindictiveness is reversible only if the district court abused its discretion. *See United States v. Moon*, 513 F.3d 527, 534 (6th Cir. 2008). *See also United States v. Dupree*, 323 F.3d 480, 484 (6th Cir. 2003) (rejecting the defendant's argument that his prosecutorial vindictiveness claim be reviewed de novo).

A district court abuses its discretion "when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Schlaud v. Snyder*, 717 F.3d 451, 457 (6th Cir. 2013) (quotation marks omitted). Because a district court has no discretion not to abide by governing law, an erroneous legal conclusion deserves no deference on appeal. *See Koon v. United States*, 518 U.S. 81, 100 (1996); *United States v.*

*Titterington,* 374 F.3d 453, 456 (6th Cir. 2004). As a result, even under abuse-of-discretion review, a district court commits error requiring reversal if its determination whether to dismiss an indictment for prosecutorial vindictiveness depends upon a misapplication of pertinent law. *See United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008). By contrast, where the district court's dismissal determination hinges upon factual findings, we defer to the district court's decision unless the findings upon which it was predicated are clearly erroneous. *See id.* at 635–36.

III.

As the parties recognize, a prosecutor's "broad discretion" in deciding whom to prosecute and which charges to bring "is not unfettered." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (internal quotation marks omitted). At a minimum, prosecutorial discretion is restrained by the Due Process Clause, which prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right. *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). Although a defendant may obtain a dismissal of an indictment on grounds of prosecutorial vindictiveness by showing "actual vindictiveness"—that is, "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," *Dupree*, 323 F.3d at 489—an indictment may also be dismissed as vindictive upon a showing that "in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action." *Bragan*, 249 F.3d at 481 (quoting *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir. 1980) (en banc)). In *Blackledge v. Perry*, 417 U.S. 21 (1974), for example, the Supreme Court held that, where a defendant who had been convicted of a misdemeanor exercised his right to a de novo trial, it was presumptively vindictive for the prosecution to subsequently file a felony charge against him based on the same underlying conduct. *Id.* at 27. By allowing for a presumption of vindictiveness to be drawn under narrow circumstances, the *Blackledge* rule is a prophylactic one; it safeguards a defendant's due process rights by eliminating apprehension of prosecutorial retaliation where circumstances reasonably indicate retaliation, even if there is no direct

evidence that the prosecutor was in fact improperly motivated.  *See Goodwin*, 457 U.S. at 373–76, 383; *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008); *Andrews*, 633 F.2d at 455.

If a defendant establishes that "(1) the prosecutor has some stake in deterring the [defendant's] exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable," then the district court may find that there is a "reasonable likelihood of vindictiveness" and may presume an improper vindictive motive.  *Bragan*, 249 F.3d at 482 (internal quotation marks omitted); *see United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).  The government bears the burden of rebutting the presumption with "objective, on-the-record explanations" such as "governmental discovery of previously unknown evidence" or "previous legal impossibility."  *Bragan*, 249 F.3d at 482 (internal quotation marks omitted); *Andrews*, 633 F.2d at 456.

We have previously explained that "a court faced with vindictiveness allegations must assess the fact situation before it to see if the [vindictiveness] standard is met. . . . Each situation will necessarily turn on its own facts."  *Andrews*, 633 F.2d at 453–54.  On the circumstances of this case, we hold that the district court's decision to dismiss the superseding indictment for vindictiveness was not an abuse of its discretion.

A.

The government first claims that the district court erred in ruling under *Blackledge* that there was a significant prosecutorial stake in deterring LaDeau's exercise of his suppression rights.  In this respect, the government relies heavily on *United States v. Goodwin*, 457 U.S. 368 (1982), for the proposition that "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting."  *Id.* at 381.  Relevant to this case, *Goodwin* gave two reasons for its hesitation:  (1) that, pretrial, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized," meaning that a decision to add or increase charges as the scope of the case became more clear should not excite suspicion; and (2) that it is "unrealistic to assume that a prosecutor's probable response" to "routine[ ]" pretrial motions—including "motions to suppress"—would be punitive,

given that defendants are "expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Id.*

But the government is incorrect to suggest that *Goodwin* categorically bars a district court from finding that the requisite "stake" could arise in the pretrial setting. In fact, *Goodwin* "declined to adopt a *per se* rule that in the pretrial context no presumption of vindictiveness will ever lie." *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987); *see Goodwin*, 457 U.S. at 381, 384. As a result, our pre-*Goodwin* decision in *Andrews* "remains good law," such that "prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights." *Suarez*, 263 F.3d at 479; *see Andrews*, 633 F.2d at 454. *See also United States v. Barner*, 441 F.3d 1310, 1317–18 (11th Cir. 2006) (rejecting the argument that *Goodwin* categorically bars a presumption of vindictiveness from arising in the pretrial setting). Although *Goodwin* generally counsels against a finding that a sufficient prosecutorial stake has arisen in the pretrial context, it has certainly not eliminated the possibility that a district court might conclude exactly that. Instead, "[e]ach situation will necessarily turn on its own facts." *Andrews*, 633 F.2d at 454; *accord Bragan*, 249 F.3d at 481.

The government counters that, even if *Goodwin* does not entirely preclude a district court from finding that the requisite stake exists in the pretrial setting, the district court could not have done so on the circumstances of LaDeau's case. In this vein, the government emphasizes that we have previously relied upon *Goodwin* to uphold a district court's denial of a motion to dismiss an indictment as vindictive where the defendant claimed that the prosecutor added charges against him in retaliation for the defendant's plans to file a future motion to suppress. *See Suarez*, 263 F.3d at 479. We concluded that the defendant's planned motions "were not particularly exceptional" given that many defendants file similar motions, and we observed that "the additional burden on the prosecution from the motions in proportion to the burden for the upcoming trial itself [was] rather minimal." *Id*. at 479–80. We therefore reasoned that it was well within the district court's discretion to conclude that the increased charges were an

attempt to cajole the defendant into pleading guilty, rather than an attempt to punish him for having filed the rather routine motions at issue. *Id.* at 480.

The government also asserts that this appeal is controlled by *United States v. Moon*, 513 F.3d 527 (6th Cir. 2008). There, we held that the district court did not abuse its discretion in finding that the prosecution did not have a stake in deterring the defendant's right to file a motion to dismiss the indictment, even though the defendant had made two successful motions to do so before the government obtained a third indictment containing an additional charge. *Id.* at 535.

Yet the government is mistaken in arguing that this precedent compels the conclusion that the district court reversibly erred in finding the requisite stake in the circumstances presented here. In fact, neither of the two rationales undergirding the caution expressed in *Goodwin* against presuming vindictiveness in the pretrial setting applies to the circumstances of this case. First, there is little reason to suspect that the prosecutor's view of LaDeau's case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment. *See Goodwin*, 457 U.S. at 381; *Suarez*, 263 F.3d at 480. "The decision in *Goodwin* stemmed largely from the Supreme Court's understanding of . . . the frequency with which prosecutors must act on (and later compensate for) incomplete information or understanding." *Meyer*, 810 F.2d at 1247. Here, by contrast, the only substantive occurrence between the two indictments was LaDeau's successful suppression motion. The government has never suggested that any other development altered its perception of the case during the thirteen months that it was pending, so there is nothing to indicate that the superseding indictment compensated for unexpected changes or an incomplete initial grasp of the pertinent issues or facts.

Second, the burden that LaDeau's successful suppression motion placed upon the government was significant. *Goodwin* catalogued the type of "routine[ ]" and minimally burdensome filings that it thought unlikely to prompt a vindictive prosecutorial response: "pretrial motions to suppress evidence; to challenge the sufficiency and form of an

indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury." *Goodwin*, 457 U.S. at 381. As we recognized in *Suarez*, this list is only illustrative of motions that may typically be expected to cause the government very little responsive burden. *Suarez*, 263 F.3d at 479. In *Suarez*, for example, where the defendant had merely indicated that he was planning to file a suppression motion at some point in the future, we rejected the defendant's argument that a presumption of vindictiveness was warranted, given that the only burden that the government faced prior to filing a superseding indictment was the "rather minimal" one of preparing a response to the motion. *Id*. at 480. And in *Moon*, although the government was forced to return twice to the grand jury to obtain new indictments, it was able to resuscitate its prosecution on charges identical to those originally brought in the initial indictment simply by properly alleging an interstate commerce element. *Moon*, 513 F.3d at 533, 536. *See also Poole*, 407 F.3d at 776 (agreeing that the prosecution had an insignificant stake in deterring the defendant's exercise of his right to trial where the prosecution "welcomed" the initial mistrial).

By contrast, LaDeau's motion to suppress was neither routine nor typical: he succeeded in suppressing crucial evidence and thereby eviscerated the government's possession case. As the government concedes, LaDeau's successful motion eliminated its ability to prosecute the charge alleged in the first indictment. Unlike in *Suarez*, the prosecution here was saddled with the prospect of restarting LaDeau's prosecution from scratch, and unlike in *Moon*, the prosecution could not do so simply by making minor adjustments to the language of the indictment and carrying on with the same substantive counts as before. Plainly, LaDeau's exercise of his suppression rights is not fairly comparable to the minimally aggravating pretrial filings contemplated in *Goodwin*. It did not inflict merely "some" incidental burden on the government's ability to prove its case; it inflicted a mortal blow. *Goodwin*, 457 U.S. at 381. Obtaining LaDeau's conviction on the initial charge of possession of child pornography became not simply more of a chore for the prosecution than it had been before; it became impossible. *See United States v. Eddy*, 737 F.2d 564, 572 (6th Cir. 1984) (presumption of vindictiveness

arose where the government brought a perjury indictment against a defendant who had been acquitted at trial).

Nor are we convinced by the government's concern that finding the requisite stake in this case insufficiently preserves the prosecution's ability to engage in effective plea bargaining. To be sure, the Supreme Court long ago adopted the position that the prosecution may legitimately threaten to bring harsher charges in order to induce a defendant into pleading guilty, despite the fact that the harsher charges, if brought, might appear to penalize a defendant for exercising his right to trial. *Bordenkircher v. Hayes*, 434 U.S. 357, 363–65 (1978). Because plea bargaining offers a "mutuality of advantage to defendants and prosecutors," *id.* at 363 (internal quotation marks omitted), and because the prosecution's ability to threaten a reluctant defendant with heightened charges is a necessary feature of a robust plea bargaining process, increased charges resulting from a breakdown of the plea bargaining process are not deemed vindictive, regardless of the fact that the prosecutor's goal is "to persuade the defendant to forgo his constitutional right to stand trial." *Goodwin*, 457 U.S. at 378; *see id.* at 378 n.10.

But the increased charge here did not stem from the plea bargaining process. *Cf. Suarez*, 263 F.3d at 480. Instead, the government "unilateral[ly] impos[ed]" the more severe charge without engaging LaDeau in any of "the give-and-take" compromise through which LaDeau could negotiate a concession or benefit. *Bordenkircher*, 434 U.S. at 362. Nothing in our holding today detracts from *Bordenkircher* because *Bordenkircher* simply does not apply to the facts of this case. *See Andrews*, 633 F.2d at 456 ("*Bordenkircher* must be confined to the plea bargaining context in which it arose.").

*Goodwin* left undisturbed the uncontroversial premise explicated in *Blackledge*: the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution. *See Goodwin*, 457 U.S. at 383; *Blackledge*, 417 U.S. at 27. When the prosecution "is forced to do over what it thought it had already done correctly," *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007) (internal quotation marks omitted),

or where "duplicative expenditures of prosecutorial resources" are required, *Goodwin*, 457 U.S. at 383, the prosecution's stake in discouraging the defendant's exercise of a right may be "considerable." *Blackledge*, 417 U.S. at 27. Despite the government's assertions, the same analysis applies here. LaDeau's successful suppression motion forced the government to restart its prosecution from square one in order to prevent him from "going free"—almost exactly the sort of burden that *Blackledge* identified as supporting a presumption of prosecutorial vindictiveness. 417 U.S. at 27. We reject the government's invitation to narrowly construe *Blackledge* where *Goodwin* does not require it, and we agree with LaDeau that the district court did not abuse its discretion in determining that the requisite prosecutorial stake existed on the circumstances of his case.

### B.

The government also contests the district court's ruling that it was unreasonable for the government to charge LaDeau in the superseding indictment under a receipt theory instead of under a possession theory. As a general matter, a superseding indictment is potentially vindictive only if it "add[s] additional charges or substitute[s] more severe charges based on the same conduct charged less heavily in the first indictment." *Suarez*, 263 F.3d at 480. As we pointed out in *Andrews*, "[a] prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one." *Andrews*, 633 F.2d at 454. "In the first situation, a prosecutor might well have made an honest mistake," but "in the second situation, the prosecutor will have already exercised his discretion, and the probability that the prosecutor acted vindictively is higher." *Id.*

Despite the government's attempt to characterize LaDeau's superseding indictment as containing an "alternative" charge rather than a "substituted" charge, there is no real question that the latter is the case here. The charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment, the prosecution obtained no evidence supporting the superseding indictment

that it did not already possess prior to obtaining the initial indictment, and the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged. Under *Andrews*, the likelihood that the prosecution acted unreasonably is thus somewhat increased. *Id.*; *see Suarez*, 263 F.3d at 480.

The government's asserted rationales for its charging decisions do not diminish this enhanced possibility of vindictiveness. The government does not seriously dispute the district court's finding that, after LaDeau's motion to suppress was granted, the government had three charging options: (1) conspiracy to *possess* child pornography, in violation of 18 U.S.C. § 2252A(b)(2), which carries an identical penalty to the offense originally charged—zero to ten years; (2) conspiracy to *receive* child pornography, in violation of 18 U.S.C. § 2252A(b)(1), which carries a penalty of five to twenty years; or (3) conspiracy to receive or possess child pornography, in violation of the general conspiracy statute, 18 U.S.C. § 371, which carries a penalty of zero to five years.

Given LaDeau's successful suppression of evidence indicating that he actually possessed child pornography, it was clearly reasonable for the government to adjust to the new posture of the case by recalibrating its prosecution toward a conspiracy theory. LaDeau concedes as much, indicating that it would have been reasonable for the government to obtain a superseding indictment charging him with conspiracy to *possess* child pornography under § 2252A(b)(2). As a corollary, LaDeau concedes that there was no need for the government to charge him under § 371.

But while a recalibration from a possession charge to a conspiracy-to-possess charge would have been a reasonable response to LaDeau's successful suppression motion, the district court did not abuse its discretion in finding that there was no reasonable basis for the government's decision to shift from a *possession* theory to a *receipt* theory when the latter carried a five-year mandatory minimum that the former did not. According to the government, it was reasonable to pursue a receipt conspiracy rather than a possession conspiracy because the two charges were not equally provable; instead, "the evidence available to the government best fit a charge of conspiracy to

receive" rather than conspiracy to possess. This is ostensibly because the pertinent letters discussed "how to obtain child pornography over the internet, *i.e.*, how to receive it" rather than detailing the concealment or preservation of child pornography "already in [LaDeau's] possession."

But as LaDeau observes, the evidence relating to the conspiracy remained unchanged over the entire course of the prosecution; there is no new revelation or discovery to support the government's sudden shift to a receipt theory from a possession theory.[2] At any point in LaDeau's case, the government could have charged him with either receipt or possession of child pornography, *see United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011), yet it chose to pursue the harsher charges only after his successful suppression motion. The government has repeatedly shifted its stance on why its charging decision was reasonable, but it has never persuasively demonstrated that the evidentiary landscape has materially altered, that it was previously impossible to bring a receipt charge, that it "needed time to unravel" complex evidentiary or legal issues, that it was tactically hedging its ability to admit certain key evidence, or the like. *Suarez*, 263 F.3d at 480–81. *See also Bragan*, 249 F.3d at 482. In fact, the government now attempts to explain its conduct by arguing that it would be difficult to explain to a jury that someone who conspires to download and receive child pornography necessarily conspires to possess it. But at this point, the government is grasping at straws. *See Ehle*, 640 F.3d at 695 ("As a matter of plain meaning, one obviously cannot 'receive' an item without then also 'possessing' that item, even if only for a moment."). Pursuing a harsher charge solely to evade such a marginal prospect of jury confusion cannot on its own render the prosecution's decision reasonable, and we agree with the district court that the arguments articulated by the government in defense of its charging decision here are unacceptably flimsy.

---

[2]Obviously, as the government stresses, the evidence in the case underwent an objective change: the images themselves were excluded from evidence. But the evidence relating to the conspiracy—and to whether the conspiracy was directed at *receiving* the images (rather than merely *possessing* them)—did not.

C.

The government concedes that, absent the rationales asserted for the first time in the affidavit submitted with the government's motion to reconsider, its evidence was insufficient to rebut the presumption of vindictiveness. Nevertheless, the government contends that the district court abused its discretion in ruling that the affidavit did not dislodge the presumption of vindictiveness.

We are not persuaded that the subjective rationales offered by the government in its affidavit are sufficiently "objective" explanations for the government's conduct, as is required in order to avoid the "difficult and unpleasant decision-making" that would be demanded of a court assessing a prosecutor's subjective good faith assertions. *Andrews*, 633 F.2d at 456; *see Bragan*, 249 F.3d at 482 (although circumstances such as "governmental discovery of previously unknown evidence," "previous legal impossibility," prior unavailability of the grand jury, or inexperience of the prosecutor may suffice to rebut a presumption of vindictiveness, statements that a prosecutor "committed a mistake" do not). But in any event, a motion to reconsider generally is not a vehicle to reargue a case; it may not be used to raise arguments that could have been raised on initial consideration. *See In re G.A.D., Inc.*, 340 F.3d 331, 334 (6th Cir. 2003) (Rule 60(b)); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (Rule 59(e)).[3] Given that the government clearly could have obtained an affidavit outlining its own internal charging deliberations prior to the court's hearing on LaDeau's motion to dismiss, the district court did not abuse its discretion in denying the government's motion to reconsider and declining to give dispositive weight to the affidavit proffered by the government at that time.

---

[3]We note that the Federal Rules of Criminal Procedure do not necessarily prohibit the filing of a motion for reconsideration of an order dismissing an indictment, *cf. United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006) ("In the sentencing context, there is simply no such thing as a 'motion to reconsider' an otherwise final sentence."), and we therefore rely, as do the parties, on analogous precedent arising under the Federal Rules of Civil Procedure. *See, e.g.*, *United States v. Correa-Gomez*, 328 F.3d 297, 299 (6th Cir. 2003) (discussing the imperfect portability of Rule 59(e) into the context of a criminal case, but nevertheless assuming that the government could validly file a motion asking the district court to reconsider its order dismissing the indictment for selective prosecution).

The government attempts to skirt this reality by faulting the district court's procedural handling of LaDeau's motion to dismiss. According to the government, a district court resolving a motion to dismiss an indictment for prosecutorial vindictiveness must bifurcate its determination of the motion. The government's argument relies wholly on a single sentence in *Bragan*, where we observed, "Once a court has found that a realistic likelihood of vindictiveness exists, the government bears the burden of disproving it or justifying the challenged state action." *Bragan*, 249 F.3d at 482. This, the government claims, directs that the government has no obligation to present evidence rebutting the presumption of vindictiveness until after the district court has first made a finding of vindictiveness on the record. In the government's view, it was deprived of an opportunity to rebut the presumption in LaDeau's case because the district court found that the government had failed to rebut the presumption of vindictiveness in the same order in which it found that the presumption had arisen.

But the government extracts from *Bragan* a rule that is not there. *Bragan* contains no requirement that a district court proceed piecemeal in adjudicating a motion to dismiss an indictment for prosecutorial vindictiveness; it sets forth only a logical sequence, not a temporal one. *See id*. at 484. As a general matter, a district court is not required to enter separate orders at each step of its reasoning solely in order to facilitate parties who have failed to hedge the possibility of losing at an initial stage in the analysis. We see no support in the record for the government's assertion that its prosecutorial mission would have been seriously compromised if the government were required to explain itself on the record before the district court made a final finding as to presumptive vindictiveness, and we see no sound reason to depart from our general antipathy to piecemeal litigation on the circumstances presented here.[4]

---

[4]To the extent that rebutting the presumption could entail exposing sensitive non-public details, such as the identity of confidential informants or details of the prosecution's work product, such concerns may appropriately be mitigated in the district court's discretion through procedures such as *in camera* review or a bifurcated ruling as contemplated by the government. *See United States v. Hanna*, 661 F.3d 271, 294 (6th Cir. 2011); *cf. In re Grand Jury Proceedings–Gordon*, 722 F.2d 303, 309–10 (6th Cir. 1983). We decline, however, to adopt the government's position that the bifurcated procedure it proposes is mandatory for a district court that is ruling on a motion to dismiss for prosecutorial vindictiveness.

In fact, the government represented in its initial opposition to LaDeau's motion to dismiss that it believed that it had "rebutted the presumption of vindictiveness," should any such presumption have been triggered.  At that time, evidently, the government accepted the possibility that the district court would resolve both issues in a single order.  Its attempt now to attack a procedure that it accepted in the district court without qualm until suffering an adverse ruling is without merit.

IV.

Here, the district court did not base its decision to dismiss the superseding indictment upon an error of law or upon clearly erroneous factual findings.  We find no abuse of discretion in its decision and therefore decline to disturb its judgment.

AFFIRMED.