NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0526n.06

No. 24-5775

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| BRYAN DOUGLAS CONLEY, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

LARSEN, Circuit Judge. Bryan Conley used fake online profiles to obtain sex and money from two female victims. A jury later convicted him of transporting a minor for criminal sexual activity, kidnapping, bank fraud, identity theft, and interstate threats. He appeals the conviction, raising multiple challenges. For the following reasons, we AFFIRM.

I.

Bryan Conley created fake dating profiles to lure and trick two female victims: a minor (A.Y.) and an adult (R.W.). Using the dating platform PlentyofFish.com, Conley created profiles posing as a young, wealthy member of the "De Beers" family.

He first connected with the seventeen-year-old A.Y. in November 2018. Claiming to be "Bryant De Beers," Conley offered A.Y. money for sex. A.Y. agreed, and "Bryant" sent a "driver"—who was actually Conley—to take her from Ohio to Tennessee where she would meet "Bryant." Along the way, Conley continued to message A.Y. as "Bryant." A.Y. and the "driver" stopped to spend the night at a motel in LaGrange, Kentucky. "Bryant" then texted A.Y. that he

would pay her more money if she had sex with the "driver." A.Y. did so. The next day, "Bryant" instructed A.Y. to find another man to have sex with. In exchange for the promise of more money from "Bryant," A.Y. had sex with another man in Jackson, Tennessee, while the "driver" watched and recorded the encounter.

The "driver" and A.Y. continued traveling. A.Y. began to feel drowsy and suspected the "driver" had slipped something into her drink. When A.Y. eventually asked to go home, the "driver" (*i.e*., Conley) abandoned her at a gas station in Texas, taking her purse and phone.

Two months later, Conley connected with R.W, a woman suffering from mental illness. Claiming to be "Lance De Beers," Conley offered to help R.W. with a modeling career. Posing as Lance's "agent," Conley met with R.W. several times. The "agent" took nude photos of R.W., and after he suggested she prepare for pornographic modeling, the "agent" convinced R.W. to perform sex acts on him as an "audition."

After another meeting, the "agent" took R.W.'s wallet, which contained her social security card and credit card. He then used her credit card and, with her social security number, attempted to access her bank account. On another occasion, the "agent" instructed R.W. to get into the back seat of his car and gave her a drink that caused her to fall asleep. When she woke up, the "agent" photographed R.W. bound and gagged, sent the photo to her parents, threatened to harm R.W., and demanded a ransom. Officers ultimately arrested the "agent" (*i.e.*, Conley) after observing him pick up the ransom in a controlled operation.

A grand jury indicted Conley in February 2019, charging 10 counts of making interstate threats against R.W. The court released Conley on bond, requiring him to submit to home detention and location monitoring and prohibiting travel outside of Texas and the Western District of Kentucky.

In June 2019, the government filed a superseding indictment, adding three counts related to R.W.: (1) kidnapping by inveigle and decoy; (2) bank fraud, and (3) aggravated identity theft. Conley confirmed receipt of the superseding indictment and then skipped his arraignment on June 20. The next day, Conley cut off his ankle monitor and discarded it on the side of the highway. Authorities then discovered and arrested him in Ohio.

The government filed another superseding indictment, adding a single count: interstate transportation for prostitution related to A.Y. (Count 1). The indictment described the charge in a single paragraph without providing details of the offense.

Conley moved to sever Count 1 from Counts 2–14, which all related to R.W. Because the indictment neither revealed a connection between Count 1 and Counts 2–14 nor clearly showed that the offenses were "of the same or similar character," the district court severed the charges. 3:19-cr-00019, R. 156, Order, PageID 687–89.

Before trial began, Conley also moved to dismiss based on a Speedy Trial Act violation. The district court granted the motion, dismissing the case without prejudice.

A grand jury again indicted Conley. The new indictment added information, converting the previous one-paragraph Count 1 into a 22-paragraph count and further describing the kidnapping charge. It also added a transportation-of-minors charge related to A.Y. (Count 2), which carried a mandatory ten-year minimum sentence. *See* 18 U.S.C. § 2423(a). Conley moved to dismiss Count 2, alleging prosecutorial vindictiveness. The district court denied the motion, finding that Conley failed to demonstrate either a realistic likelihood of vindictiveness or actual vindictiveness.

Conley again moved to sever the A.Y. charges from the R.W. charges. This time, the court denied the motion, finding that "[t]he factual parallels" between the counts showed that the

offenses had "a similar character" with a "similar modus operandi." R. 106, Mem. and Order, PageID 897. The court found that in both situations, as alleged in the indictment, Conley (1) used PlentyofFish.com; (2) posed as a young and wealthy member of the "De Beers" family; (3) made promises to the victim to entice her to meet him; (4) provided an excuse for why he didn't match the online picture; (5) told the victim he would drive her to meet the man she met online; (6) gave the victim a drink containing a sleeping aid; (7) offered the victim money for sex; (8) drove the victim around various states; and (9) used the victim to obtain money and sex. Further, both victims were "particularly vulnerable in some way" due to age and cognitive ability, respectively. *Id.* at 898.

Meanwhile, the government moved to introduce evidence of Conley's prior flight under Federal Rules of Evidence 402, 403, and 404(b). The court granted the motion over Conley's objection.

The jury found Conley guilty on all counts. Conley then moved for partial judgment of acquittal and for a new trial, again raising claims of prosecutorial vindictiveness, misjoinder, and improper admission of flight evidence. The court again denied his motion, but vacated Count 1 based on the government's concession that Counts 1 and 2 were "multiplicitous." R. 157, Mem. and Order, PageID 2168. Conley timely appealed.

## II.

Conley raises four arguments on appeal. We address each in turn.

## A.

Conley first argues that the district court erred in denying his claim of prosecutorial vindictiveness. Reviewing for abuse of discretion, we disagree. *See United States v. Moon*, 513 F.3d 527, 534 (6th Cir. 2008).

To succeed on a claim of prosecutorial vindictiveness, a defendant must establish either actual vindictiveness or "a realistic likelihood of vindictiveness." *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citation omitted). Conley claims only the latter, arguing that adding Count 2 after the Speedy Trial dismissal triggered a presumption of vindictiveness.

The Supreme Court has counseled against presuming prosecutorial vindictiveness in the pretrial setting. *See United States v. Goodwin*, 457 U.S. 368, 381 (1982). That's for two reasons. First, "[a]t this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.* The prosecutor may, for example, "uncover additional information that suggests a basis for further prosecution." *Id.* Even without new information, the prosecutor "simply may come to realize that information possessed by the State has a broader significance." *Id.* Second, in a pretrial setting, it would be "unrealistic to assume that a prosecutor's probable response" to "routine[]" pretrial motions would be to "penalize" the defendant; after all, defendants are "expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Id.* So, in general, "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 382. And his initial charging "decision should not freeze future conduct." *Id.*

That being said, this court has not read *Goodwin* "to adopt a *per se* rule that in the pretrial context no presumption of vindictiveness will ever lie." *United States v. LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013) (quoting *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987)). We have instead concluded that the district court may find a realistic likelihood of vindictiveness when the defendant shows both that the prosecutor had a sufficient "stake" in deterring his exercise of a protected right and that the prosecutor's conduct was unreasonable. *Id.* at 566.

Here, the district court did not abuse its discretion in determining that Conley failed to show a prosecutorial "stake" in deterring Conley's exercise of his Speedy Trial rights sufficient to trigger a presumption of vindictiveness. It is true that, after Conley's successful Speedy Trial motion, the government had to return to the grand jury for a new indictment. But Conley has not shown that his Speedy Trial motion was anything other than a "garden-variety pretrial motion[] of the kind [we have] found not to burden the prosecution." *United States v. Rosse*, 716 F. App'x 453, 462 (6th Cir. 2017). Indeed, this court has twice declined to apply a presumption of vindictiveness in response to a Speedy Trial Act dismissal. *See id.* at 462–63; *United States v. Ewing*, 38 F.3d 1217, *3 (6th Cir. 1994) (unpublished table decision) (per curiam). Successful Speedy Trial Act motions, by definition, require the prosecutor to seek a new indictment, but the mere "fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right." *Moon*, 513 F.3d at 535.

Conley attempts to distinguish *Ewing* and *Rosse*, on the ground that the government had already "prepared for trial and filed its pretrial filings." Reply Brief at 1–3. But "some repetition of prosecutorial efforts" is the inevitable response to pretrial motions, *Moon*, 513 F.3d at 535 (citation omitted), and the proximity to trial here is not sufficient "to trigger a realistic likelihood of vindictiveness," *id.* (citation modified). Even "successful [routine] motions that force the government to redo its work" generally do not trigger the presumption in the pretrial context. *United States v. Zakhari*, 85 F.4th 367, 382 (6th Cir. 2023).

We have only rarely applied the presumption of vindictiveness in a pretrial setting—twice, to our knowledge. *See Zakhari*, 85 F.4th at 381; *LaDeau*, 734 F.3d at 569. Each case involved a motion to suppress critical evidence that "presented a grave threat to the prosecution's case." *Zakhari*, 85 F.4th at 382; *LaDeau*, 734 F.3d at 569 (presuming vindictiveness after defendant's

suppression motion "eviscerated" the government's case and forced the government to start "from scratch"). Those circumstances, we said, gave the government a sufficient "stake" in deterring the defendant from filing the motion. *Zakhari*, 85 F.4th at 381–83; *LaDeau*, 734 F.3d at 569–70. Unlike *Zakhari* and *LaDeau*—but like *Ewing* and *Rosse*—Conley's Speedy Trial Act dismissal posed no grave threat to the government's case. It merely required the government to repeat some prosecutorial efforts: updating and refiling the indictment and preparing for trial. *See Moon*, 513 F.3d at 536; *see also LaDeau*, 734 F.3d at 569 (contrasting *LaDeau* and *Moon*). The district court did not abuse its discretion by not presuming prosecutorial vindictiveness.

B.

Conley next argues that the district court erred in denying his motion to sever the charge[1] related to A.Y. from the charges related to R.W. He argues that severance was required under Federal Rules of Criminal Procedure 8(a) and 14(a). We disagree.

1.

Under Rule 8(a), an indictment may charge a defendant with multiple offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). We construe Rule 8(a) in favor of joinder and review misjoinder de novo. *United States v. Deitz*, 577 F.3d 672, 692 (6th Cir. 2009). To determine whether offenses are misjoined, we review the allegations on the face of the indictment. *Id.* at 691.

As the district court correctly concluded, the charges in the indictment were of the "same or similar character" and thus properly joined under Rule 8(a). For both Count 2 and Counts 3–

---

[1] Conley references the district court's refusal to sever Counts 1–2 from Counts 3–15, but the district court vacated Count 1 after trial. No party challenges this vacatur. Thus, we address only Count 2.

15, the indictment alleged that Conley (1) used PlentyofFish.com; (2) created an account with the username "loveiseasy1198"; (3) posed as a young and wealthy member of the "De Beers" family; (4) targeted a "susceptible" female; (5) made promises to the victim to entice her to meet him; (6) provided an excuse for why he didn't match the online picture; (7) told the victim he would drive her to meet the man she met online; (8) gave the victim a drink containing a sleeping aid; (9) offered the victim money for sex; (10) drove the victim around various states; and (11) used the victim to obtain money and sex. The charges were sufficiently similar to be joined in one trial. *See United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982).

Conley argues that the offenses were misjoined because the charges involved different victims, different crimes, and separate time periods. But the rule does not require the victim, crime, or time period to be the same. *See, e.g.*, *United States v. Abbott*, 2025 WL 2237656, at *1–3 (6th Cir. Aug. 6, 2025) (finding joinder proper for four separate incidents involving different victims, occurring at different places, and occurring over three-and-a-half months). Joinder is proper when the crimes are of the "same or *similar character*." Fed. R. Crim. P. 8(a) (emphasis added). That standard was met here. Thus, we find joinder proper.

2.

Under Rule 14(a), the court may order separate trials of counts if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). We review the denial of a severance motion under Rule 14(a) for an abuse of discretion. *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 477–78 (6th Cir. 2006). To establish an abuse of discretion, Conley must make "a strong showing of prejudice"; he must prove that joinder "compromise[d] a specific trial right or prevent[ed] the jury from making a reliable judgment." *Id.* at 478 (citations omitted).

Conley fails to bear his burden. He generally contends that joinder resulted in evidence confusion and "spillover prejudice"— that is, the risk that evidence admissible to prove one charge improperly affected the jury's conclusion on another. *Cf. United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985). But we presume that a jury sorts out evidence and considers each count separately. *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987). And spillover does not require severance absent "substantial," "undue," or "compelling" prejudice. *Thomas v. United States*, 849 F.3d 669, 676 (6th Cir. 2017) (citation omitted). Further, the district court gave specific instructions to minimize any prejudice to Conley. *See* R. 122, Jury Instrs., PageID 1053; *United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001). With all of this, Conley fails to show "compelling, specific, and actual prejudice." *Thomas*, 849 F.3d at 675.

Further dooming Conley's claim, the district court found that severance would not likely affect the evidence. Even with separate trials, evidence of both incidents could have been admitted as modus operandi or identity evidence. *See* Fed. R. Evid. 404(b). "Since such evidence would have been admissible in separate trials, there was no prejudice in consolidating the two charges in one trial." *United States v. Hamilton*, 684 F.2d 380, 384 (6th Cir. 1982).

Thus, the district court did not abuse its discretion.

## C.

Conley next argues that the district court erred in admitting flight evidence. We disagree.[2]

---

[2] Panels in this circuit appear to have disagreed over the standard of review for the admission of Rule 404(b) evidence, such as flight evidence. *See, e.g.*, *United States v. Clay*, 677 F.3d 753, 754 (6th Cir. 2012) (Kethledge, J., dissenting from denial of rehearing en banc) (noting the "intra-circuit" conflict). Some of our cases have applied an abuse-of-discretion standard. *See, e.g.*, *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010). Others have applied a tripartite framework, with a different standard of review governing each step. *See, e.g.*, *United States v. Mandoka*, 869 F.3d 448, 456–57 (6th Cir. 2017). Yet others have acknowledged the intra-circuit conflict but have explained why the two standards "are not in fact inconsistent." *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008); *see also Mandoka*, 869 F.3d at 457. We need not weigh

Two weeks after the government filed a superseding indictment, Conley cut his ankle monitor, discarded it on the side of the highway, and was then arrested out of state. Conley does not dispute these facts. Instead, he argues that the evidence was not properly admitted under Federal Rule of Evidence 404(b) because it lacks probative force.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Yet, the rule allows such evidence to be admitted "for another purpose." *Id.* We have held that flight evidence may come in "as an admission of guilt by conduct." *United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005) (citation omitted).

To ensure the probative value of such evidence, the district court deployed the four-step analysis required by our cases. *See United States v. Dillon*, 870 F.2d 1125, 1127 (6th Cir. 1989). That test considers "the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.* (citation omitted). Reviewing the evidence, the district court concluded that "all four inferences are satisfied here." R. 113, Mem. and Order, PageID 933.

Conley provides one objection to the court's reasoning. He says the five-month "delay [between the original indictment and flight] severely undermines the probative value of the flight evidence." Appellant Br. at 21. This argument fails.

---

in because the district court did not err under any standard. There are no disputed facts here and we see no error, even reviewing the district court's legal determinations de novo.

Flight need not immediately follow the initial charges. *Dillon*, 870 F.2d at 1128; *see also United States v. Touchstone*, 726 F.2d 1116, 1119–20 (6th Cir. 1984) (admitting evidence of flight that occurred almost three years after arrest). Instead, flight may be introduced when "it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." *Dillon*, 870 F.2d at 1128. Here, Conley fled within two weeks of learning that the superseding indictment had been filed against him. Conley does not explain why this event could not "spark a sharp impulse of fear." *Id.* We conclude that it could. Thus, the district court did not err in finding the evidence probative of guilt.

### D.

Finally, Conley argues that the cumulative effect of errors warrants a new trial. Because we have found no error, this argument fails. *See Deitz*, 577 F.3d at 697 ("[C]umulative-error analysis is not relevant where no individual ruling was erroneous.").

\* \* \*

We AFFIRM.