NOT RECOMMENDED FOR PUBLICATION

File Name: 17a0650n.06

Nos. 16-6320/6321

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE  WESTERN |
| SAMUEL ROSSE III, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Samuel Rosse III pled guilty to selling and conspiring to sell methamphetamine, but he reserved the right to appeal the district court's rulings on a number of motions.  In particular, Rosse argues that the district court should have: dismissed the first indictment with prejudice in response to his first speedy-trial motion; dismissed the second indictment for either vindictive prosecution or excessive pre-indictment delay; dismissed the second indictment for various speedy-trial-related reasons; granted his motion to dismiss or, in the alternative, allowed him to withdraw his guilty plea due to prosecutorial misconduct; and held another sentencing hearing after we initially remanded his case.  In the end, each of these arguments lacks merit.

**I.**

On April 28, 2012, Arkansas police arrested Jeff Culbreath for attempting to sell methamphetamine. Culbreath claimed to have received those drugs from Rosse. Culbreath then cooperated with the investigators, making recorded calls to Rosse in order to arrange a controlled purchase of one pound of methamphetamine. The two met on May 3 in Memphis, TN, where Rosse handed Culbreath a plastic bag. Investigators arrested Rosse and seized the bag, which contained between six- and seven-hundred grams of 99.2% pure methamphetamine. In subsequent searches of the warehouse where Rosse was believed to have lived and manufactured methamphetamine, officers found a large sum of cash, 37 firearms, ammunition of various calibers, laptop computers, and cell phones that contained pictures of the methamphetamine manufacturing process. Further investigation revealed that Rosse had for years enlisted the help of others, including Jeff and Paula Culbreath (Rosse's then-girlfriend), to sell the methamphetamine he manufactured.

On September 19, 2012, a federal grand jury indicted Rosse on one count of possession with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Rosse made his initial appearance in federal court on September 20, made bond, and was arraigned on October 17. The court initially set the report date for February 1, 2013, and after a great number of continuances for various reasons,[1] Rosse eventually appeared in

---

[1] The case was first continued until March 27 to allow for further preparation. On March 27 defense counsel requested time to complete a mental evaluation, so the court continued the case until April 26. The court again continued the case until May 23. On May 22 Rosse moved to continue the report date due to illness, the court granted that motion and set the report date for June 19. On that date and after denying another motion to continue, the court set an August 19 trial date. On August 9, Rosse, wishing to interview additional witnesses, filed another motion to continue. After initially denying the motion, the court granted a short continuance after a meeting in camera, continuing the trial until August 26. The court set a hearing on August 22 for Rosse to change his plea, but Rosse did not appear due to an apparent suicide attempt. At the August 22 hearing, the government moved to revoke Rosse's bond pending a competency evaluation, arguing that Rosse was either a danger to himself or was intentionally delaying

court on September 9, 2013. On that date, the court granted the government's pending motion for a mental evaluation and ordered Rosse into custody for a competency determination. Rosse changed counsel on September 12, and at his new counsel's request, the court set a detention hearing for September 18 to decide whether Rosse could self-report for the competency evaluation. On September 18 the court concluded that either Rosse had a mental health issue or else he was a flight risk, so it ordered him to submit to the mental competency exam in custody.

Meanwhile Rosse had filed his first motion to dismiss on September 16, arguing that the abovementioned delays violated the Speedy Trial Act, 18 U.S.C. §§ 3161–3162. The court referred that motion to a magistrate judge. The government conceded a technical violation of the Speedy Trial Act but maintained that dismissal should be without prejudice based on the factors enumerated in 18 U.S.C. § 3162(a)(1). On October 7 the magistrate judge recommended that the court dismiss the indictment because the 77-day delay between Rosse's arraignment and trial violated the Speedy Trial Act. However, considering "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice," as 18 U.S.C. § 3162(a)(1) instructs, the magistrate judge agreed with the government that the dismissal should be without prejudice. First, the magistrate judge found that the charged drug offense was categorically serious under *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000). Second, the magistrate judge found that the 77-day delay was a mere oversight, led to no tactical advantage for the government, and did not prejudice Rosse. Third, the magistrate judge found that, under *United States v. Robinson*, 389 F.3d 582, 587–88 (6th Cir. 2004), because the delay caused no actual

the case. The government also informed the court that Rosse had asked Jeff Culbreath to perjure his testimony, and defense counsel confirmed that there had been contact between the two men. Rosse did not appear on August 26 because he was still in the hospital, so the court reset the matter for September 3. On September 3 Rosse's counsel informed the court that Rosse had been transferred to a different medical facility. The court again reset the case for September 9.

prejudice and there was no prosecutorial misconduct, reprosecution would not impact the administration of justice. Rosse objected to the magistrate judge's recommendation, arguing that the delay was actually 107 days. Rosse also argued for the first time that the § 3162(a)(1) factors favored dismissal with prejudice, maintaining that he was and continued to be prejudiced by the delay and that the prosecution's motion for a mental evaluation amounted to prosecutorial misconduct.

In a January 22, 2014 order, the district court agreed with Rosse that the delay was actually 107 days but otherwise adopted the magistrate judge's recommendation. Responding to Rosse's objections, the district court found that the 107-day delay was neither excessive nor did it prejudice Rosse. The court further refused to find prejudice because Rosse was out on bond during the non-excludable portion of the delay, until the court deemed custodial treatment and mental evaluation necessary. Finally, the Court found that "the process and the ultimate report stemming from the mental evaluation will not impact [Rosse's] defense upon reprosecution[,] nor does it demonstrate any Governmental misconduct," noting that Rosse's counsel had also sought a competency determination earlier in the litigation. The district court dismissed the indictment without prejudice.

On the previous day, January 21, the government filed a criminal complaint against Rosse, and a grand jury re-indicted him on January 30, charging him with possession with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). At a detention hearing held that day, a magistrate judge granted Rosse conditional release on a $15,000 bond. The next day, the government appealed that release order to the district court, which granted a stay and set the matter for hearing on February 5. At that hearing the government put on evidence and argued that Rosse had failed to appear for his scheduled trial in

order to locate and threaten the government's witnesses. The government also announced that it was preparing a superseding indictment based on that new information. After a continuance at the request of defense counsel, the court denied bond on February 18.

On March 19, the grand jury returned a superseding indictment charging Rosse with conspiracy to manufacture, possess with intent to distribute, and distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. § 846, and with possession with intent to distribute 670.5 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The indictment also sought criminal forfeiture of property derived from Rosse's alleged crimes. At his initial appearance on March 27, Rosse requested additional time to review discovery and prepare a motion to dismiss alleging prosecutorial vindictiveness, which the court granted.

On April 11, 2014, Rosse filed his second motion to dismiss, which alleged vindictive prosecution. Rosse argued that the government had sought the superseding indictment in retaliation for Rosse's successful exercise of his right to dismiss the first indictment under the Speedy Trial Act and for his detention hearing before the magistrate judge. Rosse also claimed that his Fifth Amendment rights were violated by a pretrial delay of more than a year. In response, the government argued that Rosse had not shown a realistic probability of vindictiveness and had failed to demonstrate the prejudice necessary to his constitutional claim. The court referred the motion to a magistrate judge, who, after a continuance at the request of defense counsel, held a hearing on May 28. After that hearing Rosse filed a bench brief in which he, among other things, argued for the first time that the prosecution was "actually vindictive," i.e., that the prosecution acted with the actual intent to punish him for the exercise of his rights, after having conceded at the hearing that he was not pursuing such a claim. After considering the evidence, including an in-camera review of the grand jury testimony, the magistrate judge

issued a recommendation on June 25, which rejected all of Rosse's arguments and recommended that the motion be denied. Rosse objected to the magistrate judge's findings on his actual vindictiveness and realistic probability of vindictiveness arguments.

After a de novo review of the magistrate judge's recommendation, the district court rejected the two arguments raised in Rosse's objections. Although the court found the actual vindictiveness argument waived, the district court considered the claim "out of an abundance of caution," before finding it "substantially without merit." The district court also rejected Rosse's reasonable likelihood of vindictiveness argument. Relying on *Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001), the court noted that Rosse's claim required him to "establish[] [that] he exercised a protected right, the prosecutor has some 'stake' in deterring the petitioner's exercise of his right[,] the prosecutor's conduct was somehow 'unreasonable[,]' and there was as an intent to punish." The district court found that, because the prosecution would not have to retry the case or incur considerable additional expenditures after either motion, "the Magistrate analyzed the facts of this case and correctly found that, at this stage, no perceived prosecutorial stake existed." The court then rejected Rosse's argument that the government's seeking of the superseding indictment was unreasonable, noting:

> The Magistrate Judge determined that the prosecutor's decision to seek the superseding indictment, even if evidence of more severe charges was available and known to the Government at the time the original indictment was sought, was not unreasonable. The Magistrate determined that not only does a prosecutor have the right to negotiate a guilty plea but also has the discretion to seek additional charges. *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). Allegations that AUSA Kitchen's conduct was unreasonable in this case [are] speculative and without support in the record.

Finally, the court found that the mere filing of a superseding indictment does not reflect an intent to punish generally and that here specifically the two sentences would most likely merge and

cause no increase to Rosse's total punishment. Thus, the district court adopted the magistrate judge's recommendation and denied Rosse's motion to dismiss.[2]

While Rosse's second motion to dismiss was still pending, he filed a third motion to dismiss on July 22, which alleged that the government had violated the Speedy Trial Act, Western District of Tennessee Speedy Trial Plan, Fed. R. Crim. P. 48(b), and the Sixth Amendment. The district court denied the motion two days later. The court found that the although the seventy-day period under the Speedy Trial Act had passed, all of that time except for seven days was excludable, most of it due to Rosse's several motions and continuances. The court also found that the delay from Rosse's prior case did not count towards any constitutional violation because "a new Speedy Trial clock starts each time the Government re-indicts a defendant."

On July 25 Rosse pled guilty to both counts in the superseding indictment, but he reserved the right to appeal the district court's rulings on his various motions. The court held a sentencing hearing over two days in early 2015. Several witnesses, including Paula and Jeff Culbreath, testified against Rosse. The court ultimately sentenced Rosse to a below-guidelines term of 324 months' imprisonment. Rosse appealed, but before briefing Rosse's counsel discovered evidence that he believed to show that state prosecutors had treated Jeff Culbreath leniently in exchange for his cooperation with federal authorities. Rosse's counsel also discovered the 2014 felony drug conviction of Paula Culbreath that the government did not disclose. Rosse also claimed that, based on this new information, the government had knowingly allowed both Paula and Jeff Culbreath to testify falsely at his sentencing hearing. With consent

---

[2] The district court did not consider the Fifth Amendment and Speedy Trial arguments in the second motion because Rosse did not object to the magistrate judge's finding on those points.

of both parties, we vacated the judgment and remanded the case for the district court to consider whether the government had violated *Brady* and *Giglio*.

On remand Rosse again moved to dismiss the indictment or, in the alternative, to withdraw his guilty plea. He alleged that the government had violated *Brady* and *Giglio* by failing to disclose relevant impeachment evidence of Jeff and Paula Culbreath, and that "the government allowed [the Culbreath siblings] to testify falsely under oath." After a two-day evidentiary hearing, at which both Paula and Jeff Culbreath testified, along with several other witnesses, the court denied the motion. The court concluded that there were no *Brady* violations with regard to Jeff Culbreath because:

> There has been no showing that the Government failed to knowingly disclose Jeffrey Culbreath's cooperation and the leniency afforded him in his Arkansas case. Culbreath's drug-related arrests and his cooperation with officials were openly disclosed and discussed in all proceedings before this Court. What happened at Culbreath's sentencing hearing and the content of the Hansom letter have now been fully presented and explored. This Court concludes that this additional information is cumulative and of little value, given the totality of Culbreath's past, as communicated to the Court throughout the pendency of this case. The Court finds there were no *Brady* violations in reference to Jeffrey Culbreath. *Kyles*, 514 U.S. at 437-38.

Similarly, the government committed no *Brady* violations with respect to Paula Culbreath because:

> Paula Culbreath admitted that she was sentenced to serve ten years of probation for the Arkansas state court charges. She freely discussed and admitted her extensive drug use, criminal convictions and her involvement with Rosse's methamphetamine operation. Ultimately, given the facts of this case, if the Government failed to timely disclose all of Paula Culbreath's prior convictions, or correct any misstatements or omissions, it does not rise to the level of a *Brady* violation or impact the outcome of this case or the sentence imposed. . . .
>
> The Court finds the inconsistencies in Paula Culbreath's testimony regarding the total number of her drug convictions are inconsequential to the Court's determination regarding her credibility. This so called new information has no impact on Rosse's final sentence.

Finally, the district court found that any withheld evidence would have been cumulative and thus non-prejudicial, noting that:

> The bottom line is that the Court is fully aware of the nature of cooperators, and the fact that cooperators are usually not members of church choirs. As noted, the nature of the additional information about the Culbreaths is cumulative. In other words, it is more of the same type of impeachment information that they had already admitted to. In this case, there is no prosecutorial misconduct or "corruption of the truth-seeking function of the trial process." *United States v. Agurs*, 427 U.S. 97, 120 (1976). Therefore, the Defendant has not established cause or prejudice under *Brady* for the Court to grant the motion to dismiss this case.

The court also denied Rosse's motion to withdraw his guilty plea. The court relied on the seven-factor test from *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994):

> When deciding whether there is a "fair and just reason" to grant a defendant's motion to withdraw his guilty plea, the district court must consider several factors including: 1) the timeliness of the motion; 2) any reason for the untimeliness; 3) assertion of innocence; 4) the circumstances surrounding the guilty plea; 5) the background of the defendant; 6) the defendant's exposure to the criminal justice system; and 7) prejudice to the government if the motion is granted.

To the first point, the court found that Rosse's motion, having been filed 18 months after his plea, was untimely, and to the second point, that Rosse lacked good reason for that delay. To the third and fourth points, the court found that Rosse had never maintained his innocence, and that nothing in the record suggested that he would have pled differently had the withheld evidence been turned over. The court also found the fifth and sixth factors to weigh against allowing withdrawal, noting that, although this was Rosse's first offense, he led a very large and successful drug enterprise and understood the charges and proceedings against him. Relying on *United States v. Lineback*, 330 F.3d 441, 445 (6th Cir. 2003) (Gilman, J., concurring), the court did not consider the seventh factor because all of the others weighed against Rosse. Having found Rosse's allegations to be without merit and thus finding no need to reconsider his

sentence, the court then re-imposed the same below-guidelines 324-month sentence without further hearing.

Rosse now appeals the district courts' rulings on several of the motions he has filed across his two cases, and he claims procedural error in his sentence on remand. We address each argument in turn.

## II. First Motion to Dismiss (Speedy Trial Act)

The district court did not abuse its discretion when it dismissed the first indictment without prejudice.[3] The Speedy Trial Act instructs courts, when deciding whether to dismiss an indictment with or without prejudice, to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). All of these factors weigh against dismissal with prejudice in this case. First, drug offenses are categorically serious for purposes of the Speedy Trial Act, *see United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000), and Rosse has marshalled no authority to support his argument that the government's refusal to indict his coconspirators somehow makes his offense less serious. Second, the facts and circumstances that led to the dismissal do not show any bad faith or attempt to gain a tactical advantage on the part of the government. Rosse's argument that the government, in "bad faith," sought a "frivolous" mental competency evaluation as a way around

---

[3] Where, as here, the district court "set[s] forth written findings with regard to the[] factors [enumerated in the Speedy Trial Act, 18 U.S.C. § 3162(a)]," *United States v. Moss*, 217 F.3d 426, 430 (6th Cir. 2000) (quoting *United States v. Pierce*, 17 F.3d 146, 148 (6th Cir. 1994)), we review the court's decision to dismiss an indictment with or without prejudice under a "modified abuse of discretion standard," *id.* (quoting *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992)). Under that standard, "the district court's factual findings will be reversed only if the findings are clearly erroneous," *id.* at 430–31 (quoting *United States v. Taylor*, 487 U.S. 326, 336 (1988)), and the district court's "judgment of how opposing considerations balance" in applying those statutory criteria to the facts "should not be lightly disturbed." *Id.* at 431 (quoting *Taylor*, 487 U.S. at 337).

the Speedy Trial Act is particularly weak because it was defense counsel who first suggested the need for a competency evaluation. To the third point, the most relevant considerations are "whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004). Rosse has not shown that he suffered any actual prejudice due to the delay, and the only misconduct he alleges is the government's having sought a competency evaluation, which as noted above is baseless.[4] Finally, Rosse has not shown any of the district court's factual findings undergirding the above analysis to be clear error. Therefore, dismissal without prejudice was proper.

### III. Second Motion to Dismiss
### (Vindictive Prosecution and Fifth Amendment Pre-Indictment Delay)

The district court's denial of Rosse's second motion to dismiss was not erroneous because he did not show that the prosecution acted vindictively or that any pre-indictment delay violated the Fifth Amendment.

Rosse has not made out a vindictive prosecution claim because he has failed to show a "reasonable likelihood of vindictiveness,"[5] so the district court did not abuse its discretion when it denied his motion on that ground. *See United States v. Young*, 847 F.3d 328, 361 (6th Cir. 2017) (motion to dismiss for prosecutorial vindictiveness reviewed under abuse of discretion standard). Rosse argues that he is entitled to a "presumption of vindictiveness" that the

---

[4] The government's subsequent actions (e.g., anything relating to the second indictment, including the alleged *Brady* violations discussed *infra*), have no bearing on whether the first indictment should have been dismissed with prejudice because the district court judge could not have seen the future.

[5] The district court correctly found that Rosse did not preserve his "actual vindictiveness" argument. Rosse raised this argument for the first time in his Bench Brief before the magistrate judge, but he had already abandoned the argument during the evidentiary hearing. The magistrate judge considered the argument waived and did not address it. Because failing to raise an argument before a magistrate judge precludes appellate review, *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000), explicit waiver of an argument before a magistrate judge must also do the same *a fortiori*.

government has failed to rebut. But in order to invoke that presumption, a defendant must show that "the prosecutor has some stake in deterring the petitioner's exercise of his rights," *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001) (internal numbering quotations omitted), which Rosse has not done. The government had no "stake" in Rosse's motions contesting his detention and lack of speedy trial. Invoking a presumption of vindictiveness in a pretrial setting, though possible, *see United States v. Andrews*, 633 F.2d 449, 453–56 (6th Cir. 1980) (en banc), is necessarily difficult. That is because "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor," and "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *United States v. Suarez*, 263 F.3d 468, 479–80 (6th Cir. 2001) (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). Here, the burden imposed on the prosecution by Rosse's pretrial motions was minimal. As in *Goodwin*, *id.* at 383, Rosse's motions did not require the prosecution to "do over what it thought it had already done correctly," *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007). Unlike in *Blackledge v. Perry*, 417 U.S. 21 (1974), Rosse's motions did not "clearly require increased expenditures of prosecutorial resources." *Id.* at 27. Rosse's motions were merely garden-variety pretrial motions of the kind found not to burden the prosecution in *Suarez*, 263 F.3d at 479–80, which involved motions to dismiss the indictment and suppress evidence. Because the prosecution here lacked a sufficient "stake," there is no reason to presume vindictiveness.

*United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013), is not to the contrary. There, the defendant, charged with possessing child pornography, successfully moved to suppress "crucial evidence" underlying his possession charge, thereby "eviscerat[ing] the government's possession case." *Id.* at 569. We held that the prosecution had a stake in the defendant's exercise of that

right because it "forced the government to restart its prosecution from square one." *Id.* at 570. The case here is very different. After Rosse successfully moved to dismiss the first indictment, the government simply filed a criminal complaint and sought a new indictment. In *United States v. Moon*, 513 F.3d 527 (6th Cir. 2008), we held that the need to refile an indictment did not create a sufficient prosecutorial "stake" in the outcome, *id.* at 536, and the same is true here. In addition, after Rosse's successful bond hearing before a magistrate judge, the government appealed that determination to the district court with relative ease. Unlike in *LaDeau*, where the defendant's exercise of his rights saddled the government with the considerable burden of starting its entire case from scratch, 734 F.3d at 570, Rosse's motions were at most a minor inconvenience. Thus, because Rosse's motions hurt the prosecution far less than LaDeau's, that case gives no reason to presume here that the government sought the superseding indictment as retaliation for Rosse's pretrial motions.

Rosse also makes an argument that pre-indictment delay violated his Fifth Amendment rights, but that is not so. To claim pre-indictment delay in violation of the Fifth Amendment, a defendant must show that the delay itself has caused actual prejudice. *United States v. Schaffer*, 586 F.3d 414, 425–26 (6th Cir. 2009). Rosse has not made that argument.

## IV. Third Motion to Dismiss (W.D.T.N. Speedy Trial Plan, Fed. R. Crim. P. 48, Speedy Trial Act, Sixth Amendment Speedy Trial Clause)

The district court did not err by denying Rosse's third motion to dismiss because Rosse did not state a violation of any of the proffered legal bases.

First, Rosse's claim that the second indictment should be dismissed with prejudice because the government did not comply with the Western District of Tennessee Speedy Trial Plan is baseless. That plan does not create enforceable substantive rights; it merely reflects that court's strategy for implementing the requirements of the Speedy Trial Act. In *United States v.*

*Cianciola*, 920 F.2d 1295 (6th Cir. 1990), we held that the government's failure to comply with the same speedy-trial plan did not establish a violation of the Speedy Trial Act itself. *See id.* at 1299. Thus, the district court's rejection of this argument was proper.

Second, Rosse's claim under the Speedy Trial Act fails because it does not account for excludable time. The Speedy Trial Act requires a defendant's trial to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs," 18 U.S.C. § 3161(c)(1), but delays attributable to pretrial motions and continuances are excluded from the seventy-day limitation. *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). Here, the district court calculated each excludable day, noting the event that triggered the exclusion, and Rosse does not argue that those calculations were erroneous. The district court correctly rejected this claim.

Third, the delay did not violate Fed. R. Crim. P. 48 for basically the same reason. That rule gives the district court discretionary authority to dismiss an indictment when an "unnecessary delay occurs in[] . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). The delay in Rosse's case was not unnecessary: there were no statutory or constitutional speedy-trial violations, and as noted above, there were only seven days of non-excludable delay, a calculation that Rosse does not challenge. Thus, because Rosse has not shown that he suffered an "unnecessary delay," the district court did not err.

Finally, there was no Sixth Amendment Speedy Trial violation here. To assess whether there has been a constitutional speedy-trial violation, courts balance four unweighted factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972*)*. To make out a Sixth Amendment

violation, a defendant must first show a delay that is "uncommonly long," otherwise, "judicial examination ceases." *United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011) (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006)). Rosse's argument on this point, and in particular the dates from which he calculated the delay, is not entirely clear, but his claim of "twenty-two months" is sufficient to put the other factors into play, *see Robinson*, 455 F.3d at 607 (one-year delay presumptively prejudicial). That assumption turns out to be inconsequential, though, because the remaining factors weigh so strongly against him. Most pertinent here is "the reason for the delay," *see Barker*, 407 U.S. at 530, where "[t]he core task is determining which party shoulders the balance of blameworthiness for this delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001). As noted earlier, the vast majority of the delay resulted directly from Rosse's litany of pretrial motions and continuances granted at his request, and Rosse has not shown that calculation to be erroneous. The remaining factors weigh against Rosse as well. Rosse did not assert his speedy-trial rights until his third motion to dismiss,[6] after all of his other arguments had failed before a magistrate judge. Finally, the only forms of "prejudice" Rosse points to are the increased charges in the superseding indictment and the less favorable plea bargain he received. Those matters are not directly related to time delay in the way that "dimming memories and loss of exculpatory evidence" (the examples focused upon in *Doggett v. United States*, 505 U.S. 647, 654 (1992)) might be. Rosse does not come close to stating a Speedy Trial Clause violation under *Barker*.

---

[6] Rosse also asserted his Sixth Amendment Speedy Trial Clause right under the first indictment, but he has not preserved that claim. Failure to object to a magistrate judge's Report and Recommendation precludes appellate review. *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Here, Rosse raised his Sixth Amendment argument in his motion to dismiss the first indictment, which the district court referred to a magistrate judge. The magistrate judge rejected the argument as not adequately developed, and Rosse did not object. That failure prevents appellate review.

**V. Fourth Motion to Dismiss (Prosecutorial Misconduct)**

The government did not violate *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972). For that reason, the district court was correct to deny Rosse's motion to dismiss on that ground and to reject his alternative request to permit him to withdraw his guilty plea.

First, the government did not fail to disclose evidence that Jeff Culbreath had agreed to cooperate with either federal or state authorities in exchange for lenient treatment. To establish a violation of *Brady* or *Giglio*, a defendant must show that the prosecution had favorable and material evidence in its control and failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972). Because the evidence pointed to by Rosse does not contradict Jeff Culbreath's testimony, does not suggest that any leniency agreement between Culbreath and federal officials existed, and in any event would be cumulative, the government did not withhold any favorable and material impeachment evidence.

The transcript of Jeff Culbreath's Arkansas-state sentencing hearing was not *Brady* or *Giglio* material. At that hearing, Charles Easterling, the prosecuting attorney, said to the court:

> Your Honor, just as I read that I kinna shutter [sic] with regards to this. However, as I have indicated to the Court as Mr. Stanley has indicated to the Court, Mr. Culbreath cooperated fully with local officers and also with federal officers with regards to a, what I would classify as a very high scale investigation that commenced after his arrest and that is the basis for the State's very lenient treatment for this case.

First, the transcript would not have impeached Culbreath because it was not inconsistent with his testimony, in which he merely said that he did not recall what Easterling had said at the hearing. Second, the transcript does not show that there was any kind of leniency agreement that would have resulted in biased testimony against Rosse. Easterling testified that he alone made the decision to grant Culbreath probation, and he could not recall any federal officials contacting

him to suggest leniency. Ancel Jines, the state investigator who told Easterling about Culbreath's cooperation, also testified that Easterling was the one who had recommended probation. At most, the transcript shows that Culbreath had a leniency agreement with state officials due to his cooperation with federal investigators. But any state-level agreement would have given Culbreath no reason to give biased testimony at Rosse's sentencing hearing because the state case had concluded long before federal officials ever contacted Culbreath about testifying. Because the decision to grant probation was an independent decision made by a state prosecutor in a long-since-concluded case, rather than a bargained-for exchange with federal officials, there was no motive for Culbreath to fabricate testimony in this case.

Nor does the transcript support an inference that, even in the absence of an explicit leniency agreement with federal officials, Jeff Culbreath might have testified against Rosse to ward off potential federal prosecution. Culbreath already testified that he was aware of the possibility that the federal government could charge him at any point, that the government had told him that it could not offer him immunity, and that the government made no promise not to charge him. So although Culbreath may have had a subjective hope that he would not face federal prosecution, that impeachment topic was adequately covered during Rosse's sentencing hearing, and the transcript would not have added anything to that line of inquiry.

The letter sent to Easterling by Ted Hansom, Culbreath's defense attorney in his state case, was also not *Brady* material. The letter merely mentions Culbreath's cooperation with federal officials. It does not suggest that anybody had agreed to treat Jeff Culbreath leniently in exchange for that cooperation. Joe Murphy, the Assistant U.S. Attorney whom the letter mentioned, testified that standard practice would have been to record in writing any grant of immunity to Culbreath, and Murphy further testified that he could not find such a document after

a diligent search. The record made Jeff Culbreath's mere cooperation abundantly clear, so this letter would have been cumulative where relevant.

Second, the withheld conviction of Paula Culbreath was not material because it was cumulative. The government concedes that it failed to disclose Paula Culbreath's 2014 conviction for delivery of methamphetamine when it produced the rest of her criminal history prior to Rosse's sentencing, and it also agrees that the conviction is impeachment material. But Rosse was not prejudiced because the impeachment evidence was not material. "[The] touchstone of materiality is a 'reasonable probability' of a different result," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), and when, as here, a defendant's sentencing hearing follows a guilty plea, the question is whether there is a reasonable probability that the favorable information would have caused a different result at sentencing. *See Banks v. Dretke*, 540 U.S. 668, 698–99, 703 (2004). Prior to his sentencing hearing, the government gave Rosse the records of Paula's many other prior convictions, which all involved methamphetamine. During her testimony at Rosse's sentencing hearing, she admitted to having used methamphetamine extensively and having sold several packages of methamphetamine obtained from Rosse. The 2014 conviction was just more of the same. As the district court explained, "[C]ooperators are usually not members of church choirs. As noted, the nature of the additional information about the Culbreaths is cumulative. In other words, it is more of the same type of impeachment information that they had already admitted to." At bottom, there is no way that evidence of one more conviction, of the same type that Paula Culbreath had already admitted to and had been cross-examined about, would have made any difference if introduced at Rosse's sentencing hearing.

Rosse has also failed to show that the government suborned perjury. His claim as to Jeff Culbreath is meritless because Rosse has failed to show that there was an undisclosed leniency agreement between Jeff Culbreath and either state or federal prosecutors, so Jeff Culbreath could not have perjured himself when he said that no such agreement existed. As to Paula Culbreath, Rosse has failed to show that the government knew her testimony to be false. Of course the government can neither knowingly put on false testimony nor fail to correct it, even on matters going only to witness credibility. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). Paula Culbreath did testify in Rosse's sentencing hearing that her most recent conviction was in 2010, when in reality she also had the 2014 conviction discussed above. But Rosse has pointed to no evidence, and a search of the record has revealed none, that the government knew about this conviction at the time of the sentencing hearing. Moreover, because the conviction was cumulative, it would have made no sense for the government to break the law by intentionally not correcting the record if it had known about the conviction. The government appears to have made an unintentional mistake, and if the government failed to disclose the 2014 conviction due to its inadvertence, then it could not have corrected Paula's now-known-to-be-false testimony concerning it.

Because there is no evidence of prosecutorial misconduct, the district court did not abuse its discretion when it denied Rosse's request to withdraw his guilty plea. And to the extent that Rosse argues that, even apart from any constitutional violation, he might never have pled guilty had he known all of the abovementioned information, the argument fails because Rosse would never have been entitled to that information—or any impeachment evidence at all—prior to entering his guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 629, 633 (2002).

## VI. Scope of Remand

Rosse's final argument—that the district court erred by not holding a new sentencing hearing after we vacated the judgment and remanded the case—is also without merit. Our remand order did not require the district court to hold a new sentencing hearing. The entire order read:

> Defendant Samuel Rosse III appeals the order dismissing without prejudice an indictment based on speedy-trial violations (Case No. 15-5235) and the February 20, 2015 judgment convicting him of two counts of conspiracy to manufacture, to possess with intent to distribute, and to distribute methamphetamine (Case No. 15-5236). He moves for a remand to the district court to address his claim that the government violated the disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). The government agrees that a remand to the district court to address the issues raised by Rosse is necessary.
>
> Rosse maintains that the government failed to produce *Brady* material concerning two of the witnesses who testified at his sentencing hearing. The documents relied on by Rosse are not part of the district court record and were not considered by the district court. The government states that a remand would permit the district court to consider these documents and to take additional testimony and documents, if necessary, to resolve Rosse's allegations of impropriety. In light of the agreement of the parties, a remand to the district court is warranted.
>
> The motion to remand, as supplemented, is **GRANTED**, the February 20, 2015 judgment is **VACATED**, and these appeals are **REMANDED** to the district court for further proceedings.

Our mandate to the district court could not have been clearer: the court was to address the *Brady* allegations that prompted the parties' consent to a remand. The district court did just that. In the counterfactual where those allegations had any merit, then a new sentencing hearing would probably have been necessary, but that is not this case.

Rosse's last argument, that the district court committed a procedural error on remand by not stating the reasons for its sentence "in open court," in violation of 18 U.S.C. § 3553(c), also fails. The district court initially held a two-day sentencing hearing, in which Rosse called and cross-examined witnesses, made arguments to the court, and was given the opportunity to be

present and allocute. The district court sentenced Rosse in open court after considering the § 3553 factors. On remand, Rosse had another two-day hearing, in which he again called and cross-examined witnesses to support his argument that the government had violated *Brady* and *Giglio.* After fully considering Rosse's arguments and the evidence supporting them—as that evidence related to both his motion to dismiss and his sentence—the district court rejected those arguments and re-imposed the original sentence. Given that well-developed sentencing record—bolstered on remand—and the district court's careful initial sentencing and rejection of Rosse's *Brady* arguments, there is ample evidence in the record of how the court reached its sentencing decision under 18 U.S.C. § 3553.

Based on those extensive proceedings, Rosse's claim that he "does not know what criteria and factors the district court utilized to determine his sentence," cannot be maintained. None of the facts changed between Rosse's sentencing hearing and the district court's re-imposing of the same sentence; the only development was Rosse's meritless claim of withheld impeachment evidence. Because nothing was different, the district court relied on the same factors as it did when it first handed down the sentence. After finding no *Brady* violation, there was no reason to disturb the findings made at the prior sentencing hearing and spend another two days re-litigating the exact same issues to achieve the same result. District court judges can rely on factual findings made at prior sentencing hearings. *See United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008). The district court committed no error.

## VII.

The judgment of the district court is affirmed.